EDWARD L. BAKEWELL, INC., a corporation, Respondent,

v.

Hal A. KROEGER, Jr. and Carol F. Kroeger, his wife, and Richard H. Waltke, Jr., and Doris M. Waltke, his wife, Cross-Appellants.

Nos. 42569, 42606.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 31, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 15, 1981.

Application to Transfer Denied
July 14, 1981.

James F. Mauze, Clayton, for Kroegers.

Charles Alan Seigel, St. Louis, for Waltkes.

Robert C. Jones, Clayton, for respondent.

PUDLOWSKI, Presiding Judge.

This is a consolidated appeal from the judgment in an interpleader action filed by Edward L. Bakewell, Inc. against Hal and Carol Kroeger, and Richard and Doris Waltke to determine ownership of a $21,000 earnest money deposit. The trial court held that the Kroegers were entitled to $16,000 of the deposit and the Waltkes to $4,250.[1] Both parties have appealed. We reverse and remanded with instructions to enter judgment in favor of the Waltkes for the amount of the deposit and accumulated interest less the amount quoted Bakewell.

On June 21, 1977, the Waltkes submitted a contract to the Kroegers' real estate agent, Bakewell, for the purchase of the Kroegers' residence, "Lionwood." Lionwood is a five acre residential tract located in Ladue, Missouri. The contract provided the purchase price of $350,000. The contract also contained a financing contingency which provided:

> This contract is contingent upon the availability to purchaser of financing, as set forth below, to be *secured by deed or deeds of trust on said property.* If commitment, therefore, be not obtained by 5:00 p. m. on July 14, 1977, this contract shall be null and void and earnest deposit returned to purchaser less any expense incurred by or in behalf of purchaser. Said financing being a conventional loan secured by First Deed of Trust with principal sum of $250,000.00, amortized in equal monthly installments of principal and interest over a period of twenty-five years. Interest rate to be at prevailing market rate but not to exceed 8½% per annum ... Loan to be arranged by Purchasers. (Emphasis added).

By agreement the purchase price was raised to $356,000 and the interest rate in the financing contingency to 9½%. The Waltkes intended to sell their current home for $106,000 and finance the balance. The Waltkes deposited $5,000 as earnest money with Bakewell when they initially submitted the contract on June 21, 1977. Pursuant to the contract another $16,000 was due by June 27, 1977.

On June 24, 1977, Mr. Waltke took the sale contract to St. Louis County Bank

---

1. Bakewell was granted $750 of the $21,000 as attorney's fees.

where Mr. Waltke had been banking for thirty years and met with Patrick Stevenson, a real estate loan officer. Mr. Waltke requested a conventional real estate loan, as called for in the sales contract, in the amount of $250,000 secured by a deed of trust. This request was refused.[2] Mr. Waltke then requested a conventional real estate loan in the amount of $100,000. In so doing he was required to complete a residential loan application which revealed his income and assets. His gross income came from the following sources:

| | |
|---|---:|
| Waltke Investment Co. dividends | $34,000 |
| New York Stock Exchange Stock | 10,000 |
| Municipal bonds | 4,500 |
| Yearly gift[3] | 5,000 |
| Salary | 9,000 |
| Father-in-law rent[4] | 12,000 |
| Gross Income | $74,500 |

The application also disclosed the following assets:

| | | |
|---|---|---:|
| Waltke Investment Co.[5] | Non-negotiable | |
| New York Stock Exchange | | |
| Stock Approx. | | 200,000 |
| Mo. Municipal bonds AA | | 75,000 |
| Present home | | 106,000 |
| Total Assets | | $381,000 |

After preparing the residential loan application, Mr. Waltke spoke with Mr. Imboden of the commercial loan department concerning a demand loan of $150,000 secured by the above listed stocks and bonds. Mr. Imboden stated that if the stocks and bonds were valued as Mr. Waltke stated, the bank would be willing to make a $150,000 loan. This would be a demand loan with the collateral remaining in the bank's possession. Mr. Waltke also requested and was granted a $21,000 loan secured by the municipal bonds alone. A note dated June 27,

1977, was prepared and signed by the Waltkes and returned to the bank. The Waltkes used the proceeds to pay the balance of the earnest money deposit, $16,000, to Bakewell as required under the sale contract.

After June 27th, several events took place which made the purchase impossible. According to the Waltkes, Mrs. Waltke's father suffered several strokes and it became clear that he would be unable to move into the guest house. This unfortunate occurrence deprived the Waltkes' of $12,000 a year income which they had been anticipating. Further, on July 10, Mr. Waltke was informed that he was fired from his employment at Waltke Investment Co. depriving him of $9,000 per year in salary. Thus, on July 10, the Waltkes' claim, they informed the Kroegers that the sale could not be consummated because of financial difficulties. According to the Kroegers, Mrs. Waltke called Mrs. Kroeger on July 10, 1977, and explained the purchase could not be completed because Mr. Waltke's father did not approve of the purchase of "Lionwood" and threatened to fire Mr. Waltke from his job and withhold their yearly Christmas gift if the sale was consummated.

On July 14, 1977, Mr. Waltke demanded that Mr. Kroeger authorize the return of the earnest money deposit. Mr. Kroeger refused. Lionwood was subsequently sold to a third party for $340,000.

In September, 1977, Bakewell filed a petition for an order of interpleader against the Waltkes and Kroegers. Subsequently the Kroegers filed a cross claim against the Waltkes seeking in Count I, recovery of the $21,000 earnest money deposit; in Count II, actual damages resulting from the subsequent sale in the amount of $16,000 with interest; and in Count III, the sum of $10,455 with interest for damages associated

---

2. The trial court made a specific finding of fact that Waltkes' request for a conventional real estate loan was refused. There was substantial evidence in the record to support this finding. Thus, we defer on this point to the trial court.

3. Annual Christmas gift from his father.

4. Mrs. Waltke's 84 year old father intended to move into an attached guest house from a nursing home and was to pay $1,000 per month in rent.

5. This was closely held stock valued at $500,000 but which contained severe restrictions against sale except in the event the company was liquidated or upon death of a shareholder.

with the costs of relisting and maintaining the property. The Waltkes filed an amended cross claim against the Kroegers seeking the $21,000 earnest money and $100,000 in punitive damages for wrongful and malicious conspiracy and conversion.

After trial, the court held that:

1) That the Waltkes' actions and conduct ... construed a waiver of any defense grounded on the provision in the sales contract that the purchasers obtain a conventional real estate loan of $250,000 at 8½% is, or was, the sine qua non upon which this action must be grounded.

2) Waltkes' acts and actions in seeking a collateral loan after seeking and not obtaining a conventional real estate loan and his act thereafter of depositing the earnest money with plaintiff company is dispositive of this issue and constitutes a waiver of any defenses available (if any) so far as it sets forth and pertains to defendants Waltkes' obtaining a $250,000 conventional loan at 8½% interest.

The trial court then: (1) Awarded the Kroegers $16,000 in damages, the difference between the contract price and the price Lionwood brought on the open market. (2) Found in favor of Kroegers on Waltkes' cross claim for the earnest money and punitive damages. (3) Awarded $4,250 to the Waltkes. Interest was divided between the parties in relation to the amount of the judgment awarded. Both Waltkes and Kroegers have appealed.

In their first point the Waltkes assert the trial court erred in finding their conduct constituted a waiver of the financing contingency in the sale contract. We agree.

■ The issue of waiver was not properly before the trial court. Kroegers, in paragraph 4 of their cross claim, asserted that on "or before July 11, 1977, defendants Waltkes obtained said commitment for financing in the sum of Two Hundred Fifty Thousand Dollars ($250,000) and said financing contingency of the contract was eliminated and pursuant thereto required defendants Waltkes to purchase said property." It was apparent Kroegers' theory was that Waltkes had complied with the financing contingency not that they had

waived that provision. *Breese v. Jett*, 556 S.W.2d 696, 710 [9–10] (Mo.App.1977). Further, Kroegers' answer to Waltkes' cross claim did not raise the affirmative defense of waiver. Rule 55.08. *Westinghouse Electric Co. v. Vann Realty*, 568 S.W.2d 777, 781 (Mo. banc 1978). Thus the issue of waiver was not before the court on Waltkes' cross claim either. Moreover, the rule that pleadings may be amended to conform to the evidence will not aid the court's determination that the Waltkes waived the financing contingency. Rule 55.33(b). The pleadings in this case may not be so amended because viewing the evidence in the light most favorable to the Kroegers does not reveal that the Waltkes' actions constituted a waiver of the financing contingency.

Waiver has been defined as:

The intentional relinquishment of a known right, on the question of which intention of the party charged with waiver is controlling and, if not shown by express declarations but implied by conduct, there must be a clear, unequivocal, and decisive act of the party showing, such purpose, and so consistent with intent to waive that no other reasonable explanation is possible. *Bartleman v. Humphrey*, 441 S.W.2d 335, 343 (Mo. 1969).

■ There was no express waiver of the financing provision. *Koedding v. Slaughter*, 481 F.Supp. 1233 (E.D.Mo.1979). Furthermore, we have reviewed the record and are unable to find any conduct by the Waltkes which evinces a clear, unequivocal and decisive intent to waive the financing contingency. The trial court found a waiver from Waltkes' acts of inquiring about alternate methods of financing and making the second installment on the down payment, $16,000, on June 27, 1977. The evidence shows Mr. Waltke approached Mr. Imboden, an officer of the St. Louis County Bank, for a conventional loan as called for in the sales contract: $250,000 at an interest rate not to exceed 9½%. The Waltkes, having done business with St. Louis County Bank for some 30 years, reasonably expected that if they could obtain the loan at all they would be able to secure it from the St. Louis County Bank. The bank refused to

make the Waltkes a conventional real estate loan for $250,000 at 9½%. An officer of the bank testified that the bank would make a loan commitment for $100,000 to be secured by a deed of trust on Lionwood. The bank also proposed to lend $150,000 secured by almost all of the Waltkes' liquid assets, including the stocks and bonds described above. This loan would be a demand note and the collateral would be retained by the bank. It would have required payment of interest only. The interest rate on the note was to change every six months and was subject to being called at any time. This was not the type of loan specifically called for in the sale contract. We cannot agree with the trial court that by paying the balance of earnest money deposit and inquiring as to alternative financing the Waltkes intended definitely and conclusively to forever waive their right to the provisions of the contingency clause. *Berger v. McBride & Sons Builders*, 447 S.W.2d 18, 21 (Mo.App.1969). Evidence of a waiver was simply absent from this case. Thus, application of the doctrine of waiver was inappropriate.

■ In their second point the Waltkes argue that the evidence established they were unable to obtain the financing specifically described in the contract. Therefore, the Waltkes argue, pursuant to the conditions of the contract they are entitled to the entire amount of the earnest money deposit, $21,000. We agree.

The sales contract, beside providing a financing contingency, also required the Waltkes, as the purchasers, "to do all things necessary, including but not limited to the execution of the loan application and other instruments, and to cooperate fully in order to obtain the financing necessary to complete this transaction." Thus the Waltkes were under a contractual obligation to attempt to obtain the requisite financing through the application of reasonable effort, or to demonstrate that the financing was unavailable from any source. Even if this contract provision were not present Waltkes would be under an implied obligation to diligently pursue the loan. *Willeford v. Walker*, 499 S.W.2d 190 (Tex.Civ. App.1973); *Betnar v. Rose*, 259 Ark. 820,

536 S.W.2d 719 (Ark.1976); 78 A.L.R.3d 880 "Sufficiency of Real-Estate Buyer's Effort to Secure Financing Upon Which Sale is Contingent." Further, at trial, the Waltkes bore the burden of proving they had so exercised reasonable effort or that the financing was unavailable. *Collins v. Roth*, 224 S.W.2d 129, 131 (Mo.App.1949).

The trial court in its findings of fact found that Mr. Waltke requested a conventional real estate loan in the amount of $250,000 from St. Louis County National Bank but was refused. The Kroegers vigorously dispute this. However, we have examined the transcript and have determined that there was substantial evidence to support it. The Waltkes also presented evidence that they were unable to obtain from any bank in the St. Louis area a conventional loan in the amount contemplated by the contract. Patrick Stevenson and Thomas Noonan, officers of the St. Louis County Bank, testified that their bank would not have made such a loan secured only by the residence. Further, Mr. Imboden, also of St. Louis County Bank, testified that the principal and interest payment on a $250,000 loan amortized over 25 years would be $26,208 a year or nearly 50% of the Waltkes' gross income. Making such a loan to the Waltkes would be highly questionable, according to Mr. Imboden. In addition the Waltkes called Gerald Schoor, President of the Landmark Bank of Creve Coeur. Mr. Schoor testified that the financing described in the sale contract would not have been available to the Waltkes from any source in the St. Louis metropolitan area. Schoor testified that based upon his experience the loan would be rejected because Waltkes' gross income was insufficient to justify the loan. According to Schoor, the rule of thumb "applied by lending institutions was to limit a loan to 2 or 2½ times the applicant's gross income." Applying this rule of thumb, the Waltkes would have been financed a maximum of $185,000. Had a bank been willing to loan them $185,000 the Waltkes would still have been required to negotiate an additional substantial loan of $75,000, secured by a second deed of trust, to meet the financing contingency.

The Kroegers presented no evidence that the Waltkes could have obtained financing as called for in the sale contract.

We think it clear from the evidence that Waltkes established that they did not receive the financing as specifically set forth in the sale contract by July 14, 1977, and they exerted a reasonable effort although the financing was unavailable. Consequently the Waltkes are entitled to the return of the earnest money deposit.

Since we find for Waltkes on their cross appeal, we need not consider Kroegers' claim that the trial court erred in computing damages.

Judgment reversed and remanded with instructions to enter judgment in favor of the Waltkes for $20,250 and all accumulated interest.

WEIER and GUNN, JJ., concur.

