Allen G. GOLDBERG and Daniel W. Gordon, Appellants,

v.

CHARLIE'S CHEVROLET, INC., Respondent.

No. 47630.

Missouri Court of Appeals, Eastern District, Division Three.

May 29, 1984.

Gary H. Feder, Clayton, for appellants.

Andrew G. Neill, St. Louis, for respondent.

REINHARD, Judge.

Plaintiffs (purchasers) appeal from a judgment for defendant (seller) in a suit for return of purchasers' earnest money deposit in connection with a real estate sales contract. We affirm.

Sometime in February, 1981, purchasers contacted seller concerning property for sale in St. Louis. Purchasers sought the property, formerly used as an automobile showroom and repair facility, for a home improvement/hardware store. Following subsequent discussions, purchasers presented a sale contract to seller for purchase of the property and improvements at a price of $300,000. This agreement was entered into on March 19, 1981, and provided for closing on April 30, 1981.

The contract drafted by purchasers contained a financing contingency which provided that purchasers were to receive a "satisfactory inducement resolution by the Industrial Development Authority of the City of St. Louis ... for an issuance of a tax-exempt revenue bond in the amount of $605,000 ..." by April 27, 1981 or "... this contract shall be null and void and earnest money returned to purchaser." In accordance with the terms of the contract, purchasers tendered to seller earnest deposits amounting to $6,000.00.

Securing the necessary inducement resolution provided for in the contract required the purchasers to undertake several steps, the first of which was to obtain a commitment letter from a lending institution for purchase of the tax-exempt revenue bond. Purchasers negotiated with at least seven lending institutions between February and April, 1981. In their negotiations with each institution, purchasers sought a loan "package" amounting to $1,155,000.00. This consisted of the $605,000 revenue bond and another $550,000 loan to finance start-up costs associated with the venture.

On March 19, 1981, Northland Mark Twain Bank expressed interest in financing the revenue bond for acquisition of the property, but refused to consider the additional $550,000 financing sought by purchasers. Purchasers refused to consider anything other than the package financing arrangement, and thus failed to pursue this funding option.

On or about April 27, 1981, the date that the financing contingency expired, purchasers informed seller that financing was unavailable and that the contract was, therefore, null and void. Purchasers thereafter demanded return of their earnest money deposits, which seller refused.

■ On appeal, purchasers allege, in effect that the court erred in entering a judgment for seller because purchasers employed reasonable efforts to obtain financing and therefore their failure to satisfy the financing contingency cancelled the contract. As this case was tried without a jury, our standard of review is well settled. On appeal, we must sustain the trial court's judgment unless there is no substantial evidence to support it; unless it is against the weight of the evidence; unless it erroneously declares the law or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.1976).

■ In the present case, the purchasers possessed an implied obligation to use reasonable efforts in pursuing the financing set forth in the contract. *Edward L. Bakewell, Inc. v. Kroeger*, 617 S.W.2d 447, 451 (Mo.App.1981). Contrary to purchasers' claims, seller was not required to raise this issue as an affirmative defense; seller in its answer denied all allegations in purchasers' petition, including that concerning reasonable efforts to secure the loan. Therefore, at trial purchasers bore the burden of proving that they exercised reasonable efforts to obtain the loan. *Id.* at 451.

■ Here, there is substantial evidence that purchasers did not use reasonable efforts to obtain the financing called for in the contract. Allen Goldberg, one of the two purchasers, testified that he sought loans from seven financial institutions, but each time for in excess of $1.1 million. This amount included the $605,000 revenue bond set forth in the financing contingency and the additional $550,000 loan. Purchasers maintain that their discussion with seller prior to entering into the contract concerned the need to finance start-up costs as well as the revenue bonds. However, any such discussion is not reflected in the unambiguous contract. *Craig v. Jo. B. Gardner, Inc.*, 586 S.W.2d 316, 324 (Mo. banc 1979); *State Bank of Fisk v. Omega Electronics*, 634 S.W.2d 234, 237 (Mo.App. 1982).

The contract is clear; the sale was contingent on purchasers obtaining $605,000 in revenue bond financing—not $1.1 million. The earnest money deposit was to be returned if reasonable efforts to obtain such revenue bond funding proved futile. Purchasers testimony established that one bank had indicated a willingness to fund the revenue bonds, but not the additional amount. Purchasers flatly refused to consider this and took no further steps to secure this financing. Purchasers' action constitutes substantial evidence of their refusal to use reasonable diligence to secure the financing called for in the contract. Therefore, the court did not err in entering a judgment for defendants.

■ Purchasers also contend that the court erred in awarding seller the $6,000.00 earnest money deposit as liquidated damages, absent evidence of seller's damages. The term "liquidated damages" means that amount which, at the time of contracting, the parties agree shall be payable in the case of breach. In contrast, a penalty is not a measure of compensation for contract breach, but rather, a punishment for default or a security for actual damages sustained due to non-performance which incorporates the idea of punishment. 22 Am. Jur.2d, *Damages* § 213, p. 298 (1965). The

case law and treatises indicate that to determine the character of a specific contract provision, it is the intent of the parties and the special circumstances of the case which control; not the contract terminology. Furthermore, "[l]iquidated damage provisions in real estate contracts are frequently utilized because the actual damages in an action for breach are 'uncertain in amount and difficult to ascertain or prove'" *Carmel v. Dieckmann*, 617 S.W.2d 459, 461 (Mo.App.1981).

The contract language in the present case is nearly identical to that of *Carmel*. Like this case, the purchasers in *Carmel* sued for return of their earnest money deposit, which amounted to 4.4 percent of the purchase price. The evidence established that sellers subsequently sold the house to other purchasers for approximately the same price. With this evidence, the trial court ruled in favor of sellers.

On appeal, this court affirmed, holding that the earnest money deposit, as a measure of liquidated damages, was neither "unreasonable in amount as a forecast of probable damages nor disproportionate to the amount of damages that could probably result from breach." *Carmel v. Dieckmann*, 617 S.W.2d at 461.

■ In Missouri, there must be a showing of some actual harm to trigger a liquidated damage clause. While this need not be a precise dollar amount, it nevertheless must be shown that some harm or damage, in fact, occurred. *Grand Bissell Towers, Inc. v. Joan Gagnon Enterprises, Inc.*, 657 S.W.2d 378 (Mo.App.1983). In real estate sale contracts, a breach by the purchaser almost inevitably damages the seller, however, the exact amount is difficult to ascertain. In the present case, seller was burdened by the contract for one and one-half months; and was constrained by the contract to reject all other offers of purchase. We found similar circumstances sufficient to trigger the liquidated damage provisions in *Carmel*, 617 S.W.2d at 461, and hold that they are equally sufficient in the present case.

The liquidated damage clause in this case, amounted to only two percent of the purchase price. It was neither an unreasonable forecast of probable damages nor disproportionate to the amount of damages which would likely result from breach. Therefore, purchasers' failure to exercise reasonable efforts to obtain the financing called for in the contract triggered the liquidated damage provision, and the trial court did not err in holding that seller suffered harm which warranted the judgment in seller's favor.

Judgment affirmed.

KAROHL, P.J., and CRANDALL, J., concur.