TIMBERLAND FOREST PRODUCTS, INC., Plaintiff–Appellant,

v.

Dennis C. FRANKS and Timberland Machinery, Inc., Defendants–Respondents.

No. SD 31898.

Missouri Court of Appeals, Southern District, Division One.

March 12, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 2, 2013.

Application for Transfer Denied May 28, 2013.

Leonard B. Rose, Amy Loth Allen, and Brett J. Coppage, Lathrop & Gage, L.L.P., Kansas City, MO, for Appellant.

Justin H. Nelson, Garrett & Silvey, West Plains, MO, for Respondents.

GARY W. LYNCH, P.J.

Timberland Forest Products, Inc. ("TFP"), appeals the trial court's judgment on a jury verdict in favor of Dennis Franks ("Franks") and Timberland Machinery, Inc. ("Timberland Machinery") (collectively "Defendants"). TFP argues that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict because the settlement agreement at issue unambiguously required that its geographic scope restricting Defendants' business activities be measured in straight-line miles. All parties also seek attorney fees on appeal in accordance with the terms of the settlement agreement. Finding the trial court properly denied a directed verdict in favor of TFP, we affirm the trial court's judgment, deny TFP's motion for attorney fees, grant Defendants' motion for attorney fees, and remand for a hearing on the amount of those fees and for entry of a judgment accordingly.

### Factual and Procedural Background

Viewed in the light most favorable to the verdict, *Bauer v. Bowes*, 350 S.W.3d 478, 479 (Mo.App.2011), the evidence adduced at trial established the following.

Franks owned and operated both Timberland Machinery and Timberland Pallet and Lumber Company. Timberland Machinery manufactured machinery used in

sawmills. Timberland Pallet and Lumber Company built pallets and later also operated a scragg mill [1] and a sawmill.

In 2001, Franks sold Timberland Pallet and Lumber Company to TFP. The representatives of TFP were Don Marchi and Peter Gencarelli. Franks did not tell Marchi and Gencarelli that he also operated Timberland Machinery. Eventually, the parties became involved in a dispute over performance of the sales contract, which resulted in the negotiation of a settlement agreement. As part of that settlement agreement, Franks and Timberland Machinery agreed not to sell machinery to customers within seventy-five miles of the location of TFP. Specifically, paragraph 7(a) of the agreement provided:

> Franks agrees, for a period of five (5) years from the date of the execution of this Agreement, that he will not, directly or indirectly, . . . engage in, assist, have any interest in any business, or do business, within 75 miles of [TFP's] present location in West Plains, Missouri, which business manufactures, sells, distributes or otherwise engages in any activity relating to or connected with the pallet, [scragg] mill, sawmill, charcoal, or firewood business. This restriction is intended to include, but is not limited to, the restriction that neither Franks nor any entity affiliated with Franks can repair, maintain, work on, broker, buy or sell any machinery for or to any business engaged in the pallet, [scragg] mill, sawmill, charcoal and firewood business if such business is located within 75 miles of [TFP's] present location. . . .

In the event of a breach of this restriction, the agreement provided for liquidated damages in the amount of $500,000. The agreement was executed by all parties,

including Timberland Machinery, on December 31, 2004.

In the spring of 2008, Franks negotiated a contract with Scott Cushman, under which Cushman agreed to buy from Timberland Machinery over $700,000 worth of machinery that would allow Cushman to begin operating a scragg mill. Cushman's place of business was 84.42 miles from TFP by road, but it was only fifty-eight miles from TFP by straight-line measurement.

In 2009, TFP filed suit against Franks and Timberland Machinery in one count alleging breach of the settlement agreement and that "as a direct and proximate result of Defendants' breach, [TFP] has been damaged." TFP prayed for "an award of damages in the amount of $500,-000[.]" In their answer, Defendants denied they breached the settlement agreement and denied that TFP had been damaged as a result of the alleged breach of that agreement. The case was tried before a jury July 27–28, 2011.

At the close of all the evidence and as provided by Rule 72.01, TFP filed a motion requesting the trial court to "enter a directed verdict as a matter of law on its claims against Defendants[.]" [2] As support for its motion, TFP stated, *in toto,* the following:

1. [TFP] submitted evidence that the Settlement Agreement and Release between [TFP] and Defendants was a valid and enforceable contract. Defendants submitted no contrary evidence.

2. As a matter of law, "within 75 miles" means radius.

3. On the issue of the parties' intent, the only evidence of what the parties

---

1. A scragg mill is a machine that cuts low-grade logs into boards to make pallets.

2. All rule references are to Missouri Court Rules (2012).

intended is that "within 75 miles" was to be measured by a radius.

4. The evidence is undisputed that Defendants were prohibited from selling machinery from December 31, 2004 up through and including December 30, 2009 for or to a business engaged in the sawmill or [scragg] mill industry within 75 miles of [TFP's] physical location of 3772 U.S. Hwy 160 West, West Plains, Missouri, 65775.

5. The evidence is undisputed that the Defendants sold machinery prohibited by the restriction in paragraph 7(a) to Cushman Forest Products, Inc. between December 31, 2004 and December 30, 2009.

6. The evidence is undisputed that, when measured in a straight line, the distance between Timberland's address in West Plains, Missouri and Cushman Forest Products, Inc., is less than 75 miles.

7. The evidence is undisputed that the amount of the sales to Cushman totaled over $770,000.

8. The evidence submitted by Plaintiff demonstrates that the contractual obligations contained in paragraph 7(a) of the Settlement Agreement and Release were breached.

9. Defendants failed to make a submissible case on any of its affirmative defenses.

The trial court denied TFP's motion for directed verdict, the jury found in favor of Defendants, and the trial court entered judgment in accordance with the jury's verdict. TFP timely filed a motion for judgment notwithstanding the verdict under Rule 72.01(b), which the trial court also denied.[3] TFP timely appeals, claiming trial court error in the denial of its

motion for directed verdict and motion for judgment notwithstanding the verdict.

### Standard of Review and Applicable Legal Principles

"A motion for judgment notwithstanding the verdict is a motion 'to have judgment entered in accordance with the motion for a directed verdict.'" *Hatch v. V.P. Fair Found., Inc.*, 990 S.W.2d 126, 137 (Mo.App.1999) (quoting Rule 72.01(b)). "The standard of review for the denial of a judgment notwithstanding the verdict (JNOV) is essentially the same as review of the denial of a motion for directed verdict." *All Am. Painting, LLC v. Fin. Solutions & Assocs., Inc.*, 315 S.W.3d 719, 723 (Mo. banc 2010). Therefore, a trial court only commits error in denying a motion for JNOV if it erroneously denied the underlying motion for directed verdict. As a result, our review here is necessarily focused on the denial of the motion for directed verdict.

The general rule is that "verdicts may not be directed in favor of the party having the burden of proof." *McMillan v. First State Bank of Joplin*, 935 S.W.2d 329, 331 (Mo.App.1996) (citing *Coleman v. Jackson Cnty.*, 349 Mo. 255, 160 S.W.2d 691, 693 (1942)).

There is, however, a well-recognized exception to the rule. If the opponent, that is the party not having the burden of proof, admits either in his pleadings or by counsel in open court or in his individual testimony on the trial the truth of the basic facts upon which the claim of the proponent rests, a verdict may be directed against him, and if the proof is altogether of a documentary nature and the authenticity and correctness of the documents are unquestioned, and if such proof establishes beyond all

**3.** In the alternative, TFP also moved for a new trial under Rule 78.02, which the trial

court denied. TFP does not challenge that ruling on appeal.

doubt the truth of facts which as a matter of law entitled the proponent to the relief sought, and such proof is unimpeached and uncontradicted, the proponent will be entitled to a peremptory instruction. This is upon the theory that there is no question of fact left in the case and that upon the questions of law involved the jury has no right to pass.

*Coleman,* 160 S.W.2d at 693.

Judge Elwood Thomas, writing for our Supreme Court in *Brandt v. Pelican,* 856 S.W.2d 658, 664–65 (Mo. banc 1993), reaffirmed the general rule and its exceptions and further explained that:

> Except for the part of the *Coleman* rule concerning undisputed documentary proof, a directed verdict is not given in favor of the party having the burden of proof no matter how overwhelming that party's evidence may be or how minuscule the other party's evidence may be; a directed verdict in favor of the party having the burden of proof (usually the plaintiff) is never based upon the plaintiff's evidence. This is in recognition of the fact that the defendant, who has the benefit of the burden of proof, is entitled to try the case with no evidence at all and to rely solely upon the jury disbelieving the plaintiff's evidence. This strategy may result in a loss for the defendant, but it will not be on a directed verdict; the defendant is entitled to have the case go to the jury.

*Id.*

### Discussion

### Trial Court Properly Denied TFP's Motion for a Directed Verdict

■ In its sole point relied on, TFP claims that its motion for directed verdict

and, therefore, its motion for JNOV should have been sustained as a matter of law "because the undisputed facts demonstrate a breach of contract in that the [settlement agreement] unambiguously required the restrictive covenant distance be measured in a straight, seventy-five mile radius[.]" The flaw in TFP's position, both here and in the trial court, however, is that this issue, as presented and framed by TFP, even if decided in its favor, did not entitle TFP to a directed verdict. This is so because assuming, without deciding, that Defendants breached the contract as a matter of law, TFP nevertheless was required to prove, as an element of its claim, the fact that it suffered damage as a result of that breach. That factual element of TFP's claim was required to be submitted to the jury and, therefore, prevented the trial court from entering a directed verdict in favor of TFP on its claim against Defendants.

■ To recover on a claim for breach of contract, a claimant must show not only that the other party breached the contract but also that claimant was damaged as a consequence of that breach. *Strouse v. Starbuck,* 987 S.W.2d 827, 829 (Mo.App. 1999). The burden of proving that damages exist and the amount of those damages rests with the party claiming breach of contract. *Ullrich v. CADCO, Inc.,* 244 S.W.3d 772, 779 (Mo.App.2008). While a liquidated-damages clause may prove the amount of those damages, "Missouri law requires a showing of actual harm to trigger a liquidated damages clause."[4] *Strouse,* 987 S.W.2d at 829 (citing *Goldberg v. Charlie's Chevrolet, Inc.,* 672 S.W.2d 177, 179 (Mo.App.1984)). Therefore, to prevail on its claim for breach of

---

4. This is so because "liquidated damages clauses are enforceable, but penalty clauses are not, and without evidence of damages, a liquidated damages clause actually becomes a penalty and is unenforceable." *Strouse,* 987 S.W.2d at 829 (citing *Grand Bissell Towers, Inc. v. Joan Gagnon, Enter., Inc.,* 657 S.W.2d 378, 379, n. 4 (Mo.App.1983)).

contract, TFP had the burden to prove that Defendants' breach of the settlement agreement actually caused it some damage.

TFP recognized and acknowledged this burden by alleging in its petition as an element of its claim that "as a direct and proximate result of Defendants' breach, [TFP] has been damaged." In addition, during pre-trial conference, both of TFP's trial counsels agreed with the trial court's statement that TFP had "the burden of establishing the fact of actual damage, not the amount, just the fact ... [a]nd beyond that [TFP was] relying on the liquidated damages clause." During the trial, after *voir dire* but before opening statements, TFP made an oral motion in limine to prohibit Defendants from eliciting testimony that Cushman, at some point in time after the lawsuit was filed, closed its scragg mill. In arguing that motion, TFP's lead trial counsel told the trial court, "It's my burden to show some damage as of the time that we took the actions we took. I either make that burden or I don't make that burden." In its attempt to carry its burden of proof on this element of its claim, TFP offered testimonial evidence that it was damaged by Defendants putting Cushman in business because TFP had to pay more for logs, accept inferior quality logs, and sell its pallets at a lower price.

Nevertheless, TFP's motion for directed verdict at the close of the evidence makes no mention of the damage element of its claim. Likewise, TFP's brief in this appeal does not mention much less address it. Both focus solely on the breach element. Even if that element was decided in favor of TFP, however, and it was de-termined that Defendants breached the settlement agreement as a matter of law, Defendants could not have been held liable on TFP's claim for that breach and a verdict directed in favor of TFP, because the factual determination as to the damage element of TFP's claim remained outstanding. Because the damage element of TFP's claim remained to be factually decided, Defendants were entitled to have the case submitted to the jury, and TFP was not entitled to a directed verdict on its claim.[5] *See Brandt*, 856 S.W.2d at 664–65. For this reason, the trial court did not err in denying TFP's motion for directed verdict and, as a consequence, did not err in denying its motion for JNOV. TFP's point is denied.

### Attorney Fees on Appeal

■■■ Relying upon the terms of the settlement agreement addressing the payment of attorney fees in the event of litigation, both TFP and Defendants filed motions for attorney fees in connection with this appeal. This Court ordered the motions taken with the case.

■■■ Missouri courts generally follow the "American Rule" which provides "that a party to litigation is responsible for paying the party's own legal fees." *Mihlfeld & Assoc., Inc. v. Bishop & Bishop, LLC*, 295 S.W.3d 163, 174 (Mo.App.2009). One of the exceptions to this rule is "where a contract between the litigating parties provides for payment of attorney fees to a prevailing party[.]" *Id.* Furthermore, "[a]ttorney fees may be awarded on appeal if they are based on a written agreement that is the subject of the issues presented in the appeal." *SE Co–Op Serv. Co. v.*

5. We note that the narrow issue before us in this appeal, as preserved and presented by TFP, is *whether* TFP's claim should have been submitted to the jury. We were not called upon to address the *manner* in which it was submitted to the jury through the trial court's jury instructions. Apart from subject matter jurisdiction questions, not at issue here, we may not consider in a civil appeal any allegations of error not briefed. Rule 84.13(a).

*Hampton,* 263 S.W.3d 689, 696 (Mo.App. 2008). Here, the settlement agreement provides that in the event of litigation to construe the agreement, "the prevailing party(s) shall have and recover from the other party(s) his, its or their reasonable attorneys' fees and other costs and expense of litigation." Accordingly, Defendants' motion for attorney fees is sustained, and TFP's motion for attorney fees is denied.

While we have the authority and expertise "to fix the amount of attorney fees on appeal ... the trial court is in a much better position to hear evidence and argument on this issue and make a determination of the reasonableness of the requested fees[.]" *Id.* at 696–97. Thus, we prefer to defer our authority to the trial court. *See id.* at 697. On remand, the trial court should hold a hearing to determine a reasonable attorney fee on appeal as requested by Defendants and enter judgment accordingly.

### Decision

The judgment of the trial court is affirmed. The case is remanded to the trial court with directions to conduct a hearing to determine a reasonable amount of attorney fees as requested by Defendants and to enter judgment accordingly.

NANCY STEFFEN RAHMEYER and WILLIAM W. FRANCIS, JR., JJ., Concur.