Jonathan R. BURST and Ruth C. Burst, Plaintiffs/Respondents,

v.

R.W. BEAL & CO., INC., Defendant/Appellant.

No. 55011.

Missouri Court of Appeals, Eastern District, Division Four.

May 9, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 7, 1989.

James L. Nouss, Robert E. Tucker, Clayton, for defendant/appellant.

Gregory G. Fenlon, Joseph A. Fenlon, Jr., Clayton, for plaintiffs/respondents.

SATZ, Judge.

Plaintiffs, buyers, sued defendant, building contractor/seller, to recover $5,000. After a jury waived trial, the court entered judgment of $3,288 in favor of plaintiffs. Defendant appeals. We reverse and remand with directions.

The trial court entered its judgment along with its findings, the latter being designated "Findings of Fact." On appeal, defendant contends the actual "findings" made by the trial court do not support conclusions of law which would result in the judgment of $3,288 entered in favor of plaintiffs; rather, defendant contends these "findings" lead to conclusions of law which should result in a judgment in favor of defendant.

Since defendant accepted the "findings" made by the trial court, it elected to limit its record on appeal to the trial court's "Findings of Fact" and the pleadings of both parties, an election to process its appeal dangerously. Plaintiffs, apparently, believed it unnecessary to file a cross-appeal attacking the court's "Findings of Fact." But, they believed the "findings" and the pleadings were not a sufficient record to support defendant's appeal. Thus, plaintiffs elected first to make a procedural attack on defendant's designated record on appeal and second to respond to defendant's arguments. Plaintiffs' decision was no less dangerous than defendant's. We take the record made by the parties.

Plaintiffs' procedural attack was made in a "Motion to Dismiss Appeal for Failure to File Transcript" and a "Motion For Frivolous Appeal." The Court ordered these motions to be taken with the case on the merits. Then, after defendant filed its brief, plaintiffs filed a "Motion To Dismiss Appeal" because defendant allegedly failed to comply with Rules 84.04(c) and (d). This Motion was also taken with the case.

We find the record adequate for our purposes here, find defendant's appeal is not frivolous and find defendant did not violate Rule 84.04(c) and (d). Accordingly, we deny plaintiffs' Motions.

We glean the necessary facts from the trial court's "Findings of Fact" (See Appendix) and the parties' pleadings. On April 4, 1987, the parties executed a "Sale Contract" for a house not yet completed. The total sale price was $326,000, which consisted of a base price of $309,210, plus $16,790 for certain specified modifications.

The contract document was a printed form: "Sale Contract (With Financing Contingency)." After execution, however, a printed provision of the contract conflicted

with a handwritten provision. The printed provision states:

3. FINANCING CONTINGENCY. This contract is contingent upon the availability to purchaser of financing, as set forth below, to be secured by deed of trust on said property. If commitment therefor be not obtained by noon of May 6, 1987, this contract shall be null and void and earnest deposit returned to Purchaser.

The handwritten provision, appears just above the parties signatures and states:

Five Thousand ($5,000.00) Dollar Earnest is Non–Refundable (Due to Changes Builder is Making Per Client Request).

After plaintiffs transferred $5,000 to defendant, defendant "proceed[ed] to make certain of the modifications." "Plaintiffs", however, "failed to obtain the necessary financing for the purchase of the house and defendant, relying on the [non-refundable] special condition, refused to return the $5,000 to the plaintiffs." Defendant sold the house to a third party for $1,500 less than the price specified in the contract in issue here. Defendant also incurred other expenses and paid an $8,761 commission to a real estate broker for the sale to the third party.

Plaintiffs sued defendant for what, at best, can be characterized as a "wrongful withholding" of an earnest money deposit, seeking $5,000 actual and $10,000 punitive damages. Defendant, in its Answer, denied plaintiffs' allegations and pleaded the affirmative defenses of "waiver" and the "Statute of Frauds." Defendant also counterclaimed for breach of contract, alleging plaintiffs failed to use reasonable efforts to obtain financing. Defendant sought, as damages, the broker's commission incurred in the sale to the third party and the difference between the sale price to the third party and the sale price to plaintiffs.

The trial court determined the $5,000 paid by plaintiffs to defendant "was intended to be liquidated damages." The court found the "liquidated damages" clause to be valid and also found plaintiffs were "responsible for this clause." Instead of allowing the defendant to retain the $5,000

as liquidated damages, however, the court found that defendant had "the burden of mitigating the damages it suffered and giving Plaintiffs credit thereon." If defendant retained the full $5,000, the court stated, it would be "unjustly enriched at Plaintiffs' expense."

After some calculation, which neither party expressly challenges on appeal, the trial court concluded the "actual damages to the Defendant caused by the Plaintiffs' failure to complete the original Sale Contract was $1,712." The court then awarded plaintiffs the difference between $5,000, "liquidated damages," and $1,712, defendant's "actual damages," *i.e.,* $3,288. In addition, the court denied defendant's counterclaim for actual damages on the ground that defendant "must live with the liquidated damages condition." Defendant's appeal followed.

There are a number of problems caused by the trial court's "Findings of Fact". These can be resolved, however, with interpretive flexibility along with a proper respect for common sense and the law.

■ First, we consider the most obvious question: what is the legal effect of the conflicting provisions concerning the "earnest money deposit"? As noted, the printed contingency clause provides: "If commitment [for financing] be not obtained by noon of May 6, 1987, this contract shall be null and void *and earnest money deposit returned to Purchaser.*" (emphasis added) The handwritten clause provides: "Five Thousand ... Dollar Earnest [money] is Non Refundable...." There is a flat contradiction between the emphasized portion of the finance contingency clause and the handwritten clause. If latter prevails, the $5,000 was non-refundable and defendant can retain the money. On the other hand, the final six words of the printed provision would entitle plaintiffs to a return of the $5,000. The two provisions cannot be reconciled. One has to prevail.

"The rule is well established that where the printed portions of a contract conflict with handwritten provisions or interlineations, the latter prevail." *Century 21–*

*Andrews Realty, Inc. v. Adams,* 691 S.W.2d 511, 512 (Mo.App.1985); *see also Belt Seed Co. v. Mitchelhill Seed Co.,* 236 Mo.App. 142, 153 S.W.2d 106, 110–11 (1941). Application of the rule here requires us to delete only the final six words of the finance contingency clause, leaving the rest intact. The written provision supersedes the printed form language "only so far as it is apparent the parties intended to modify or disregard the printed stipulations ..." *Belt Seed, supra* 153 S.W.2d at 111.

Second, the trial court found the handwritten clause to be a "liquidated damages" clause, which is enforceable, and, thus, implicitly found the clause was not a "penalty clause," which is unenforceable. *See, e.g. Grand Bissell Towers, Inc. v. Joan Gagnon Enterprises, Inc.,* 657 S.W.2d 378, 379 (Mo.App.1983). Neither party questions this determination.[1] The record explains this lack of questioning.

■ There is no bright line separating a liquidated damages clause from a penalty clause. We, in Missouri, have adopted two rules to aid us in distinguishing the two types of clauses, by aiding us to determine whether a clause is a valid damages clause. First, the damages fixed must be a reasonable forecast of just compensation in the event of a breach; or, stated otherwise, it must not be unreasonably disproportionate to the amount of harm anticipated when the contract was made. *Grand Bissell, supra* at 379. Here, the damages fixed— $5,000—is less than 1.5% of the contract price, certainly not an unreasonable or disproportionate amount.

■ The second rule requires the damages fixed be for a harm that is incapable or very difficult of accurate estimation at the time the contract was made. *Grand Bissell, supra* at 379. This rule presents no difficulty here. Defendant was to make additions to the house at plaintiffs' request. At best, it would have been difficult for

defendant to determine whether it could recoup even its out-of-pocket expenses for these additions from another buyer if plaintiffs failed to buy the house as modified. Thus, the characterization of the handwritten clause as a liquidated damage clause was not inappropriate.

But, an award of liquidated damages to defendant, obviously, presupposes plaintiffs breached the contract. This brings us to the third problem created by the record.

The printed financing contingency clause provides the "contract" is contingent upon the availability of financing to the purchaser and also provides the lack of a commitment for financing renders the "contract ... null and void." This printed clause normally imposes an implied duty on the purchaser to use reasonable efforts to obtain the financing specified in the contract. *Goldberg v. Charlie's Chevrolet, Inc.,* 672 S.W.2d 177, 178 (Mo.App.1984). The trial court, however, did not make an express finding that this duty was breached by plaintiffs; nor did it expressly declare the plaintiffs breached the contract on other grounds. But, the court did find the "Plaintiffs failed to obtain the necessary financing for the purchase of the house", also found there were "actual damages to the Defendant caused by Plaintiffs' failure to complete the original Sale Contract" and it did permit defendant to retain part of the $5,000. Unquestionably, the court implicitly found that plaintiffs "breached the contract."

However, the court not only failed to state expressly that the plaintiffs breached the contract, it also failed to set out the conduct of plaintiffs which led to its implied finding that the plaintiffs breached the contract. Was it plaintiffs' failure to use reasonable efforts to obtain the financing, or was it plaintiffs' failure to obtain the financing, regardless of the quality of plaintiffs' efforts? This lack of an express finding of plaintiffs' conduct, however, does not present an insurmountable barrier

1. Plaintiffs do make the bald statement that the issue of liquidated damages was neither raised nor tried and the almost equally bald statement that defendant waived any right to liquidated damages by counterclaiming for actual dam-

ages. We do not address statements without supporting arguments and without cases whose holding or teaching directly support these arguments. *See e.g., Bishop v. Bishop,* 618 S.W.2d 261, 263 (Mo.App.1981).

to a resolution here. Under the present contract, plaintiffs' failure to obtain financing, for whatever reason, would constitute a breach precluding plaintiffs from recovering the $5,000.

The resolution results from using an analysis parallel to that used by the Western District Court in a factually similar case. *Highland Inns Corp. v. American Landmark Corp.*, 650 S.W.2d 667 (Mo. App.1983). In *Highland,* the buyer agreed to pay a designated purchase price at closing, subject to the buyer obtaining a specified mortgage by a given date. If the buyer did not obtain and deliver this mortgage on or before the date, the contract was "null and void." However, a separate term of the contract required the buyer to deposit $10,000 as earnest money, with the proviso that if the "Buyer fails to fulfill his obligations hereunder, the ... deposit shall become the property of the Seller ..., not as a penalty, but as liquidated damages." *Id.* at 669. The buyer failed to obtain the mortgage, argued this failure rendered the contract "null and void" and sought the return of the $10,000.

In resolving this issue against the buyer, the court held the exchange of promises created a contract from which neither buyer or seller could withdraw with impunity. *Id.* at 671. However, the buyer's duty to pay the purchase price and the seller's duty to convey good title were both conditioned on the buyer obtaining and delivering the specified mortgage on the required date. If this condition did not occur, these performances were excused or, in the contract terminology, these duties were " 'null and void,' extinguished, exterminated." *Id.* at 672. The buyer's duty to deliver the mortgage was, thus, a condition precedent to the seller's duty to convey, but, the court reasoned, this was not the only duty the buyer had assumed by its contractual promises. It had, under the liquidated damage provision, assumed the separate duty to bring about the occurrence of the condition, i.e. the delivery of the mortgage. *Id.* at 674; Restatement (Second) of Contracts § 225(3) (1981). The non-occurrence of this condition triggered the liquidated damages provision. *Id.*

■ The same reasoning may be applied here. Plaintiffs' duty to pay the purchase price and defendant's duty to convey good title were conditioned on plaintiffs' securing financing by reasonable efforts. If plaintiffs failed to secure financing, using reasonable efforts, these respective duties to perform would be extinguished. Nonetheless, the handwritten clause, making the $5,000 "non-refundable," imposed on plaintiffs the separate duty to bring about this condition. *See* Restatement (Second) of Contracts, *supra.* Plaintiffs' failure to do so, regardless of their efforts, triggered the provisions of the handwritten clause— the "liquidated damages clause." In short, plaintiffs' breach did not render the entire contract "null and void."

Admittedly, in *Highland,* the court noted the wealth and sophistication of the buyer as well as the buyer's role in drafting the contract. *Id.* at 674. Here, the reverse is true. The trial court found the contract "was drawn by defendant, a well established house builder" and plaintiffs were "just customers not in the regular business of buying and selling houses." These distinctions do not lessen the applicability of the theory of the *Highland* court here. Plaintiffs were not just "customers" but were customers purchasing a house for $326,000, a rather sophisticated sum. More important, the term "non-refundable" needs no real sophistication to be understood.

■ Since the liquidated damages clause is valid, the amount stipulated in the clause should be the measure of damages. E.g., *Arnett v. Keith,* 582 S.W.2d 363, 365–66 (Mo.App.1979). However, instead of allowing defendant to retain the $5,000 as liquidated damages, the trial court limited defendant to that portion of liquidated damages that it actually incurred. Because the defendant drafted the Sales Contract, the trial court imposed on defendant a "burden of mitigating the damages" caused by plaintiffs' failure to perform. Neither law nor logic supports this imposition.

By its nature, a liquidated damages clause may operate to provide the non-

breaching party more or less than his actual damages. Given its construction of the contract and its "Findings of Fact", the trial court was required to enforce the "liquidated damages" clause as written. It was error to apportion the liquidated damages between the parties. Defendant was entitled to retain the $5,000.

Judgment reversed and remanded. The trial court is directed to enter judgment in favor of defendant on plaintiffs' claim and, as it did previously, enter judgment in favor of plaintiffs on defendant's counterclaim.

SMITH, P.J., and STEPHAN, J., concur.

### APPENDIX

### STATE OF MISSOURI

### COUNTY OF ST. LOUIS

JONATHAN R. BURST AND RUTH C. BURST, Plaintiffs,

vs.

R.W. BEAL & CO., INC., Defendant.

Cause Number: 21C87–20028

Division 43

### JUDGMENT

On the 17th day of May, 1988 came Plaintiffs, Jonathan Burst and Ruth C. Burst in person and with their attorney, Gregory Fenlon and came defendant, R.W. Beal & Co., Inc. by it's President, Roy Beal and attorney, James Nouss; opening statements were made; witnesses sworn; and testimony presented; Whereupon the Court made these:

### FINDINGS OF FACT

The parties entered into a Sale Contract on April 4, 1987 for a house that was in the process of being built by Defendant. The closing date for the sale of the house was to be May 6, 1987. The house was a standard specification house valued at $309,210.00. The parties on April 4, 1987 in the same Sale Contract agreed to certain specified Modifications of a value of $16,790.00.

This raised the total sale price of the house to $326,000.00. The Contract's closing was contingent on Plaintiff's obtaining financing. The Sale Contract also contained this condition: "Five Thousand ($5,000.00) Dollar Earnest is non-refundable (Due to changes builder is making per client request)". Plaintiffs did put up the $5,000.00 and Defendant did proceed to make certain of the modifications. The Plaintiffs failed to obtain the necessary financing for the purchase of the house and Defendant relying on the above special condition refused to return the $5,000.00 to the Plaintiffs.

After the sale fell through, Defendant did eventually sell the house to the Jones for the sum of $324,500.00. Defendant's expenses incurred after the Sale Contract was signed with the Plaintiffs were an $8,761.00 real estate commission for the subsequent sale to the Jones, $541.00 of improvements for the subsequent sale to the Jones and $7,700.00 of actual out of pocket expenses as a result of the modifications requested by the Plaintiffs and actually completed by May 6, 1987. These expenses totalled $17,002.00, thus making Defendant's ultimate sale price on the house $307,498.00. This amount was $1,712.00 less than the original price for the house sold as a specification house without any modifications. Therefore the Court determines that the actual damages to the Defendant caused by the Plaintiffs' failure to complete the original Sale Contract was $1,712.00.

The Court further finds that the $5,000.00 put up by the Plaintiffs upon the signing of the Sales Contract was intended to be liquidated damages. Plaintiffs are to be held responsible for this clause as it was not a condition subsequent as Defendant actually proceeded to make the modifications Plaintiffs requested.

The Court, however, does find that the Sales Contract was drawn by Defendant, a well established house builder in the St. Louis area. Plaintiffs were just customers not in the regular business of buying and selling houses. The Court therefore, in finding the $5,000.00 liquidated damage clause, as valid, also places upon the Defen-

dant the burden of mitigating the damages it suffered and giving Plaintiffs credit thereon.

Defendant did in fact mitigate it's damages and it should not be allowed to be unjustly enriched at Plaintiffs' expense. Plaintiffs should be entitled to receive any difference between $5,000.00 and Defendant's actual damages, if less.

Neither should Defendant be allowed to succeed on it's counterclaim as the condition of the Sales Contract set "liquidated damages" and Defendant's counterclaim is based on "actual damages". Defendant must live with the liquidated damages condition as well as Plaintiffs. WHEREFORE, IT IS ORDERED ADJUDGED AND DECREED that Plaintiffs have judgment against Defendant on Plaintiffs' claim in the sum of $3,288.00 and Plaintiffs have judgment on Defendant's counterclaim.

Costs taxed to Defendant.

/s/ Edward C. Graham
Edward C. Graham
Associate Circuit Judge of
Mississippi County, Missouri

Date: 5–17–88