308 F.Supp.2d 937 (2003)
MONSANTO COMPANY, Plaintiff,
v.
Howell Everett SWANN, Jr. a/k/a Hal Swann, et al., Defendants.
No. 4:00-CV-1481 CEJ.
United States District Court, E.D. Missouri, Eastern Division.
January 8, 2003.
*938 Adam E. Miller, Joseph C. Orlet, Glennon P. Fogarty, Erik L. Hansell, Husch and Eppenberger, LLC, St. Louis, MO, for Monsanto Company, plaintiff.
Jim Waide, Waide and Chandler, Tupelo, MS, for Hal Swann dba Howell Everett Swann, Swann Farm Partnership dba Howell Everett Swann, defendants.

MEMORANDUM AND ORDER
JACKSON, District Judge.
This matter is before the Court on plaintiff Monsanto Company's summary judgment motion. See Fed.R.Civ.P. 56(c). Defendants Hal Swann, Larry Thomas Swann, and the Swann Farm Partnership oppose plaintiff's motion, and the issues have been fully briefed.

I. Background

Plaintiff has developed genetically modified soybean and cotton plants that are resistant to glyphosate herbicides such as Roundup® brand herbicide. Glyphosate herbicides can be sprayed broadly in fields planted with these genetically modified *939 plants, killing weeds but not harming the resistant crops. Use of plaintiff's genetically modified plants substantially reduces weed control labor costs.
Plaintiff owns the following utility patents issued under 35 U.S.C. § 101 (2000): United States Patents Nos. 5,164,316 ('316); 5,352,605 ('605); 5,196,525 ('525), and 5,322,938 ('938). Plaintiff's patents claim the glyphosate-tolerant plants, the genetically modified seeds for those plants, the specific modified genes, and the method of producing the genetically modified plants.
Plaintiff authorizes various companies to manufacture and sell seed containing its patented biotechnology. Plaintiff requires that sellers of its patented seed obtain a "Technology Agreement" from purchasers and that the purchasers pay a licensing fee, or "Technology Fee," for each unit of patented seed purchased.
On February 25, 1998, defendant Hal Swann signed Plaintiff's Technology Agreement for that year. Pursuant to the 1998 Technology Agreement, plaintiff licensed the use of the patented biotechnology contained in its seed, subject to certain conditions. Those conditions include the requirement that purchased seed be used "for planting a commercial crop only in a single season" and the requirement that the licensee not "save any crop produced from [plaintiff's patented] seed for replanting, or supply saved seeds to anyone for replanting."
In the 2000 growing season, plaintiff's investigators obtained evidence indicating that defendants were planting seed containing plaintiff's patented biotechnology, which had not been legitimately purchased pursuant to an applicable Technology Agreement. Plaintiff initiated this action and eventually obtained authorization to inspect, sample, and test defendants' 2000 cotton and soybean crops. Plaintiff's testing revealed that those crops contain its patented biotechnology.
In 2000, plaintiff charged a $6.50 Technology Fee per 50-pound bag of cotton or soybean seed.
Defendants admit that, in the 2000 growing season, they replanted seeds generated from crops produced by plaintiff's patented seed. Plaintiff's Exhibit E., Dep. of Hal Swann, pp. 160, 270-71.

II. Discussion

A. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."
The movant bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of its pleadings but must set forth specific facts showing that a genuine issue of material fact exists. See Fed.R.Civ.P. 56(e).
In ruling on a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party and gives that party the benefit of all reasonable inferences drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The Court, however, must credit "that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested *940 witnesses." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citation and internal punctuation omitted).
Rule 56(c) mandates "summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
Claiming that there is no issue of material fact as to whether defendants used plaintiff's patented biotechnology without authorization or breached the 1998 Technology Agreement, plaintiff seeks summary judgment on its patent infringement claims and its breach of contract claim.
Defendants urge the Court to deny plaintiff's motion, arguing (1) that the 1998 Technology Agreement violates the doctrine of patent exhaustion or first sale; (2) that the right of farmers to save seeds of plants registered under the Plant Variety Protection Act (PVPA), 7 U.S.C. §§ 2321 et seq. (2000), permits defendants to save seeds subject to plaintiff's utility patents; (3) that the doctrine of patent misuse precludes plaintiff from asserting its patent infringement claims; and (4) that there is a material issue of fact as to whether defendants agreed to the terms of the 1998 Technology Agreement.

B. Patent Infringement

To obtain utility patent protection for a genetically modified plant, one must show (1) that the modified plant is new, useful, and non-obvious, 35 U.S.C. §§ 101-103 (2000); and (2) that the plant meets the specifications of 35 U.S.C. § 112 (2000), which require a written description of the plant sufficiently specific to enable others to "make and use" it after the patent term expires and a publicly accessible biological deposit, see 37 C.F.R. §§ 1.801-1.809 (2002).
Defendants do not claim that plaintiff's patents are invalid for failure to meet the utility patent requirements. Accordingly, the Court turns to the merits of plaintiff's infringement claim.

1.
There are two steps to evaluating a patent infringement claim: (1) claim construction and (2) infringement analysis. See Embrex v. Service Eng'g Corp., 216 F.3d 1343, 1347 (Fed.Cir.2000).

a.
At the claim construction step, the Court determines, as a matter of law, the scope of the allegedly infringed patent's claims. Embrex, 216 F.3d at 1347; see also Markman v. Westview Instruments, Inc., 52 F.3d 967, 976-77 (Fed.Cir.1995) (en banc), aff'd 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).
As relevant here, the '605 patent claims broadly cover a chimeric gene  one comprised of elements that do not naturally occur together  that is expressed in plant cells comprising a promoter element and a structural sequence of a formation different than that of the promoter element. See Plaintiff's Exhibit D, p. 8. Genes in both plaintiff's patented soybean seed and cotton seed are covered by claims in the '605 patent. The claims of the '316, '525, and '938 patents specifically address an enhanced promoter element used in the chimeric gene contained in plaintiff's patented cotton seed. See Plaintiff's Exhibit D, p. 8. All of the patents at issue, cover genes and promoter elements existing in both genetically modified seed and the plants that seeds produces. Cf. Monsanto Co. v. McFarling, 302 F.3d 1291, 1298-99 (Fed.Cir.2002) (noting that Plaintiff's patents "cover the seeds as well as the plants").

*941 b.
The patent infringement analysis requires the Court to compare the allegedly infringed patent claims with the allegedly infringing product. See Intellicall, Inc. v. Phonometrics, Inc., 952 F.2d 1384, 1387-89 (Fed.Cir.1992). Here, the allegedly infringing products are defendants' year 2000 soybean and cotton crops.
Plaintiff has introduced evidence indicating that both soybean and cotton samples from defendants' crops contain the chimeric gene covered by the '605 patent. See Plaintiff's Exhibit D, p. 14. Plaintiff has also introduced evidence indicating that cotton samples obtained from defendants' crops contain the enhanced promoter element covered by the '316, '525, and '938 patents. See Plaintiff's Exhibit D, p. 14. Defendants do not contest this evidence. See Reeves, 530 U.S. at 150-51, 120 S.Ct. 2097.
Moreover, defendants admit saving and replanting seeds generated from crops produced by seed containing plaintiff's patented technology. See Plaintiff's Exhibit E., Dep. of Hal Swann, pp. 160, 270-71.
The use of a patented product without authority constitutes patent infringement. 35 U.S.C. § 271(a) (2000) ("[W]hoever without authority ... uses ... any patented invention, within the United States ... during the term of the patent therefor, infringes the patent.").
Planting and harvesting seed is a "use" under section 271(a); therefore, there is no issue as to whether defendants used biotechnology covered by the '605, '316, '525, and '938 patents. Moreover, there is no dispute that defendants' use of plaintiff's patented biotechnology was without authority.
Accordingly, absent an applicable defense, plaintiff is entitled to judgment as a matter of law on its patent infringement claims (Counts I, II, III, and IV).

2.
Defendants raise three defenses to plaintiff's patent infringement claims: (1) that the doctrine of patent exhaustion or first sale preclude plaintiff's patent infringement claim, (2) that the PVPA preempts plaintiff's claim for infringement of its utility patent, and (3) that plaintiff's patent misuse bars its infringement claim.

a.
The Federal Circuit's decision in Monsanto Co. v. McFarling, 302 F.3d 1291 (Fed.Cir.2002), effectively disposes of defendants' first two infringement defenses. The McFarling court affirmed a district court's decision to issue a preliminary injunction addressing claims functionally identical to those presented here. In so holding, the McFarling court (1) expressly rejected the applicability of the first sale or patent exhaustion defense, see id. at 1298-99 (finding that "[t]he `first sale' doctrine of exhaustion of the patent right is not implicated, as the new seed grown from the original batch had never been sold" and that "[t]he original sale of the seeds did not confer a license to construct new seeds"); and (2) expressly rejected the possibility of PVPA preemption, see id. (finding that "the right to save seed of plants registered under the PVPA does not impart the right to save seed of plants patented under the Patent Act"); see also J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc., 534 U.S. 124, 122 S.Ct. 593, 606, 151 L.Ed.2d 508 (2001) ("[W]e hold that newly developed plant breeds fall within the terms of § 101, and that neither the [Plant Patent Act, 35 U.S.C. § 161 (2000),] nor the PVPA limits the scope of § 101's coverage.").
Defendants claim that the McFarling court's determinations do not control the "principles of law at issue in this case" because the Federal Circuit discussed the  identical  infringement defenses in *942 the context of reviewing the issuance of a preliminary injunction. They argue, "The Court of Appeals' finding that a district court did not `abuse its discretion' in finding a likelihood of success on the merits by Plaintiff is a far cry from an actual holding dispositive of the issues of this case." Defendants' Surrebuttal Brief at 2.
The legal determinations upon which a district court's preliminary injunction decision is based, however, receive no deference. Rather, the Court of Appeals will find an "abuse of discretion" where a district court "exercised its discretion based upon an error of law." Bell & Howell Document Management Products Co. v. Altek Systems, 132 F.3d 701, 704 (Fed.Cir.1997) (emphasis added). Thus, the McFarling court's legal determinations are not the product of deferential review and are entitled to their full effect here.
Accordingly, the Court finds that the Federal Circuit's decision in McFarling precludes defendants from defending against plaintiff's patent infringement claims under the PVPA or under the patent exhaustion defense.

b.
Patent misuse is an equitable defense to an infringement claim, which is available against a patentee who uses its patent in violation of antitrust laws or to impermissibly expand the scope of its patent rights with an anti-competitive effect. See C.R. Bard, Inc. v. M3 Systems, Inc., 157 F.3d 1340, 1372 (Fed.Cir.1998).
Here, defendants claim that plaintiff has implemented a "tying" arrangement: an arrangement in which a patentee conditions a license to use its patent on a separate purchase. See Virginia Panel Corp. v. MAC Panel Co., 133 F.3d 860, 868-69 (Fed.Cir.1997). A tying arrangement is a per se patent misuse. See id. (citing Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 490-91, 62 S.Ct. 402, 86 L.Ed. 363 (1942)).
Defendants claim, "A fact finder should be permitted to find patent misuse on the grounds that Plaintiff has impermissibly expanded its patent to require farmers to buy new seed each year rather than save and replant their own seed at substantial cost savings." Defendants' Brief at 15.
Although plaintiff's Technology Agreement in effect compels a grower to re-purchase seeds in the subsequent growing seasons, it does not require the purchase of plaintiff's patented seed. Without more, a prohibition on saving and replanting a certain brand of seed, does not create an obligation to purchase that same seed in subsequent growing seasons. See McFarling, 302 F.3d at 1298 (rejecting the defendant's contention that Monsanto's prohibition on seed saving and replanting constitutes patent misuse).
In an effort to preserve their misuse defense, defendants claim that plaintiff's prohibition on saving and replanting will destroy the secondary saved seed market  presumably creating a de facto obligation to purchase new seed from plaintiff's intermediaries every growing season. Quoting expert testimony offered in a similar case, defendants draw an analogy to the used-car market: "Plaintiff's practices in effect require a car owner to buy a new car every year and, therefore, destroy the secondary market and the sale of used cars." Defendants' Brief at 17.
Defendants' analogy is flawed. They are not in the position of new-car purchaser obliged to purchase a new car every year. Rather, they are in the position of a car-lessor crying foul upon discovering he cannot retain the car after his lease expires.
Borrowing defendants' analogy, the Court notes that defendants have the option of leasing another car (purchasing modified seed under the terms of plaintiff's Technology Agreement), buying a new car *943 (purchasing new seed that does not contain plaintiff's patented biotechnology), or buying a used car (purchasing saved seed). Cf. McFarling, 302 F.3d at 1298 (noting the district court's recognition of the fact that "there are over two hundred commercial sources of soybean seed, including several herbicide-resistant soybeans").
The Court finds the doctrine of patent misuse does not shield defendants from plaintiff's patent infringement claim.

C. Breach of Contract

The 1998 Technology Agreement contains a forum selection clause, which reads as follows:
THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF MISSOURI AND THE UNITED STATES (OTHER THAN THE CHOICE OF LAW RULES). THE PARTIES CONSENT TO THE EXCLUSIVE JURISDICTION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, STATE OF MISSOURI, FOR ALL DISPUTES ARISING UNDER THIS AGREEMENT.
Plaintiff's Exhibit C. Accordingly, the Court applies Missouri law to plaintiff's breach of contract claim. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (noting that the enforcement of freely negotiated forum selection provisions "does not offend due process" when the provisions are neither unreasonable nor unjust); M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 14, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (holding that a forum selection clause requiring suit in a foreign court should be enforced unless the plaintiff attempting to avoid it could "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching"); see also McFarling, 302 F.3d at 1294-96 (upholding the enforcement of the forum selection provision in Monsanto's 1998 Technology Agreement).
To recover for breach of contract under Missouri law, a plaintiff must show: (1) the existence of a binding agreement; (2) the rights of the plaintiff and obligations of the defendant under the terms of that agreement; (3) a breach by defendant; and (4) damages stemming from that breach. See Boyer v. Sinclair & Rush, Inc., 67 S.W.3d 627, 632-33 (Mo.App.2002).
Although defendants admit that Hal Swann executed the 1998 Technology Agreement on behalf of the Swann Farm Partnership, they claim that there is a material issue of fact as to whether they agreed to the no-replant terms contained in that agreement. Defendants, however, do not claim that defendant Hal Swann was fraudulently induced to sign, or did not have an opportunity to read, the 1998 Technology Agreement.
Under Missouri law, a party who signs a document after having an opportunity to review its contents is, absent fraud or duress, bound by its terms. See Warren v. Paragon Technologies Group, Inc., 950 S.W.2d 844, 846 (Mo.1997) (en banc) ("Parties are presumed to read what they sign."); Midwest Printing, Inc. v. AM Int'l, Inc., 108 F.3d 168, 170 (8th Cir.1997) (applying Missouri law and noting that, absent fraud, one who signs a document after having an opportunity to read it is bound by its terms, irrespective of whether he or she actually read that document); McFarling, 302 F.3d at 1295. Accordingly, the Court finds defendants are bound by the terms of the 1998 Technology Agreement.
*944 Pursuant to the 1998 Technology Agreement, plaintiff agreed to permit defendants to purchase and plant seed containing its patented biotechnology and defendants agreed to pay the applicable Technology Fee and use plaintiff's patented seed only in a manner consistent with the agreement's terms.
Moreover, under the 1998 Technology Agreement, defendants agreed "to not save any crop produced from this seed for replanting, or supply saved seed to anyone for replanting." Defendants admit that they saved and replanted the seed of crops grown from seed purchased pursuant to the 1998 Technology Agreement.
Finally, plaintiff has established that it has been harmed by defendants' breach in two ways: First, defendants misuse of plaintiff's patented biotechnology  to, in effect, manufacture more of that technology  has harmed plaintiff by increasing the likelihood of unauthorized use of its patented technology. Second, defendants' use of the illicitly produced seed to plant their crops has harmed plaintiff by denying compensation for the use of plaintiff's patented biotechnology.
Accordingly, the Court finds that plaintiff is entitled to judgment as a matter of law on its breach of contract claim.

D. Plaintiff's Liquidated Damages Provision

The 1998 Technology Agreement contains a liquidated damages provision, which reads as follows:
In the event that the Grower saves, supplies, sells or acquires seed for replant in violation of this Agreement and license restriction, in addition to other remedies available to the technology provider(s), the Grower agrees that damages will include a claim for liquidated damages, which will be based on 120 times the applicable Technology Fee.
Plaintiff's Exhibit C.
Liquidated damages are a measure of compensation that, at the time of contracting, the parties agree will represent damages for breach. See Diffley v. Royal Papers, Inc., 948 S.W.2d 244, 246 (Mo.App.1997). Under Missouri law, liquidated damages provisions are generally enforceable. See id. The requirements for a liquidated damages provision to validly fix damages are (1) that the harm is of a kind difficult to accurately measure and (2) that the amount fixed as damages is a reasonable forecast of the harm caused by a breach. See Burst v. Beal & Co., Inc., 771 S.W.2d 87, 90 (Mo.App.1989).

1.
Plaintiff argues that the 1998 Technology Agreement's liquidated damages provision is valid. Plaintiff claims the harm caused by breach of the Technology Agreement is difficult to measure because each misused bag of seed can produce an exponentially increasing number of illicit seed bags in subsequent seasons  in the case of soybeans, an exponential multiple of 36. See Plaintiff's Brief at 14 (noting that one bag of soybean seed can produce 36 bags of illicit seed in the subsequent growing season). Relying on the fact that a single breach could generate an enormous amount of illicit seed, plaintiff argues that multiplying the applicable Technology Fee by 120 is a reasonable forecast of the harm caused by breach.
Pursuant to the liquidated damages provision, plaintiff asks the Court to award damages in an amount equal to 120 times the year 2000 Technology Fee of $6.50 per 50-pound bag, times the number of illicit seed bags generated by defendants' misuse of plaintiff's patented biotechnology See Plaintiff's Reply Brief at 15-17.
*945 Plaintiff calculates the number of illicit seed bags by multiplying the number of acres planted with illicit seed by the minimum number of pounds of seed necessary to plant an acre and dividing that product by the number of pounds of patented seed per bag. Plaintiff calculates the number of acres planted with illicit seed by subtracting the number of acres that could be planted with legitimately purchased seed bags from defendants' total cultivated acreage.
Thus, plaintiff requests that the Court award it $912,600 under the liquidated damages provision  $6.50 per 50-pound bag (the year 2000 Technology Fee) × 120 × 1170 (number of illicit seed bags generated by defendants' misuse) = $912,600.00. See Plaintiff's Reply Brief at 15-16.

2.
Plaintiff's justification for the 1998 Technology Agreement's liquidated damages provision and its calculation of those damages rely upon incongruous conceptions of the harm caused by defendants' breach. Championing the liquidated damages provision's validity, plaintiff relies on the harm caused by the misuse of a legitimately purchased seed bag to demonstrate that breach damages are difficult to calculate. When actually calculating damages, however, plaintiff relies on the harm caused by the uncompensated use of its patented biotechnology.
Reliance on the unauthorized-use harm characterization, however, would render the liquidated damages provision invalid because  as plaintiff aptly demonstrates in its briefs  that harm is not at all difficult to calculate. See Burst, 771 S.W.2d at 90; see also Plaintiff's Reply Brief at 15-17.
Moreover, if defendants' breach of the Technology Agreement only resulted in the harm stemming from uncompensated use of plaintiff's patented seeds, the principle barring double recovery would bar plaintiff from simultaneously maintaining both its breach of contract claim and its patent infringement claims.[1]See, e.g., Forster v. Boss, 97 F.3d 1127, 1129-30 (8th Cir.1996); cf. CPG Prods. Corp. v. Pegasus Luggage, Inc., 776 F.2d 1007, 1014 n. 4 (Fed.Cir.1985) ("Though the district court ordered accounting for damages resulting from patent infringement and unfair competition, [plaintiff] is not entitled to dual damages resulting from the same act.").
The Court also finds problematic plaintiff's claim that the phrase "applicable Technology Fee" in the 1998 Technology Agreement's liquidated damages provision references plaintiff's year 2000 Technology Fee of $6.50 per 50-pound seed bag. Given the Court's obligation to construe ambiguous contractual terms against the drafter, see, e.g., Baker v. Whitaker, 887 S.W.2d 664, 670 (Mo.App.1994) ("An agreement that is ambiguous should be construed against the drafter."), the Court declines to read the Technology Agreement's liquidated damages provision to include a to-be-determined multiplier that is exclusively under plaintiff's control. Rather, the Court construes the phrase "applicable Technology Fee" to refer to the Technology Fee paid for each unit of seed that defendants purchased in 1998 and subsequently misused.
*946 In light of the above discussion, the Court finds that the 1998 Technology Agreement's liquidated damages provision is enforceable, but rejects plaintiff's proffered application of that provision. Damages calculated under the liquidated damages provision must be calculated by multiplying the Technology Fee for each misused bag  that is, each bag that supplied seeds the product of which defendants saved for replanting  by 120.
Lacking information on the applicable 1998 Technology Fee and the number of seed bags subject to defendants' breach of the 1998 Technology Agreement, the Court cannot at this point calculate the liquidated damages to which plaintiff is entitled.

III. Conclusion

For the foregoing reasons, the Court finds that plaintiff is entitled to summary judgment on its patent infringement claims and its claim for breach of contract.
Accordingly,
IT IS ORDERED that plaintiff's motion for summary judgment [# 65] is granted with respect to Counts I through V of plaintiff's First Amended Complaint. The only issues remaining with respect to Counts I through V are the issue of damages owed by defendant to plaintiff for the infringement of plaintiff's patents and the issue of damages owed by defendant to plaintiff pursuant to the 1998 Technology Agreement's liquidated damages provision as that provision is construed in this order.
NOTES
[1] Similarly, the fact that  as compensation for unauthorized patent use  plaintiff seeks damages roughly 40 times greater than the statutorily prescribed penalty for willful unauthorized patent use, see 35 U.S.C. § 285 (1994 & Supp.2000) (authorizing treble damages for willful patent violations), would likely preclude plaintiff's enforcement of the liquidated damages provision. See Paragon Group, Inc. v. Ampleman, 878 S.W.2d 878, 880 (Mo.App.1994) ("The general rule is liquidated damages clauses are valid and enforceable, while penalty clauses are invalid.").