### AAA UNIFORM AND LINEN SUPPLY, INC., Respondent,

v.

### BAREFOOT, INC., Appellant.

#### No. WD 59668.

Missouri Court of Appeals, Western District.

April 23, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 28, 2002.

Application for Transfer Denied Aug. 27, 2002.

Mark David Murphy, Overland Park, KS, for Appellant.

Alan Gallas, Kansas City, for Respondent.

PAUL M. SPINDEN, Chief Judge.

Barefoot, Inc., appeals the circuit court's judgment for AAA Uniform and Linen Supply Company in this breach of contract

action. At the center of the party's dispute is the method of payment. Although a written contract provided for a method of payment, Barefoot opted for an alternate method, and AAA Uniform accommodated it. This constituted a modification of the parties' written contract, but the circuit court did not recognize the modification and enforced the contrary written agreement. We, therefore, reverse the circuit court's judgment as contrary to the overwhelming weight of the evidence and remand the case to circuit court for further proceedings.

AAA Uniform contracted in June 1994 to rent uniforms, floor mats, and towels to Barefoot. Concerning payment, the parties' written contract said, "Terms of payment shall be cash on delivery. If approved for a ledger account, terms shall be net cash ten (10) days after statement presentation." Barefoot wanted a set monthly payment rather than an amount that fluctuated from month to month.

Barefoot asserts that it and AAA Uniform agreed to a different payment term than the contract provision—that the parties disregarded the contract's payment provision in an attempt to facilitate Barefoot's desire for a set, or flat, amount each month. AAA Uniform responds, "On this issue, the trial court received conflicting testimony from the parties.... [AAA Uniform] presented evidence (demonstrative and oral) that [Barefoot] was invoiced weekly in accordance with the contract but failed to pay each invoice as it came due[.]" Actually, the evidence was not in conflict that AAA Uniform agreed to let Barefoot pay a flat amount monthly.

AAA Uniform is correct that it sent invoices each week to Barefoot, but even in the act of doing that it acknowledged that it was permitting Barefoot to make flat payments and not requiring compliance with the written contract. For example, in a December 12, 1995, letter to Barefoot, AAA Uniform's president, Paul Heilman said:

Your estimated or flat rate payments which began at $400.00 per month and then were increased to $450.00 per month do not allow for the following:

1. There are 12 months each year but 52 weeks. This monthly payment does not allow for these extra deliveries.

2. The monthly flat rate payment does not allow for the cost of new men. We added one man in October and the second in November or a total of two employees.

3. No allowance was made for garments damaged by the Technician such as early replacement for glue stains or other factors which would cause us to substitute garments ahead of the normal period.

4. No allowance was made for purchase of Team Jackets or cleaning of these items.

We have been posting your flat rate payments to oldest invoices and the amount due is:

| Past Due Balance | 977.64 |
| November | 499.60 |
| Total Due | $1,477.24 |

Please send a check for this amount and *if you wish to continue with your flat rate monthly payment* then increase the December payment to $600.00.

*We [will ] use this payment for four months, compare same against your actual expense, and then adjust up or down matching estimated payments against actual costs.*[1]

---

1. We added the emphasis.

Clearly, Heilman's letters acknowledged AAA Uniform's acceptance of a payment that varied the contract's terms.

Obviously, the parties disagreed as to the consequences of Barefoot's flat payment—whether the payments were to keep Barefoot's account current, as AAA Uniform contends, or whether a reconciliation would occur at the end of the year, as Barefoot contends. What AAA Uniform does not seem to appreciate, however, is that a flat payment was inconsistent with Barefoot's staying current. A flat payment could not keep the account current unless the payment was to pay for more than what was due each month. The problem is so obvious that it seems a matter of common sense that the parties must have contemplated it and worked out some arrangement. AAA Uniform offered no explanation of the arrangement other than this testimony by Heilman:

> Q. Did you ... have an agreement with Mr. Barefoot that you would make an annual adjustment to the flat rate and that would take care of any of the charges?
>
> A. No, there's no such agreement.

This testimony seems contrary to Heilman's letter of December 12, 1995, in which he asked Barefoot for $1477.24 to reconcile amounts paid and amounts owing if he wanted to continue making flat payments. Barefoot, on the other hand, offered this testimony by Jeffrey Barefoot, Barefoot's president:

> Q. Did you have discussions with [Mr. Heilman] about how your account would be paid when you first opened your account with Mr. Heilman?
>
> A. We did; yes, sir.
>
> Q. And what was the content of those discussions?
>
> A. ... I think this is generic statement, are pretty difficult to read[,] and they're confusing. So shortly after we started, I contacted Mr. Heilman[,] and I had indicated that I wasn't questioning his bills—wasn't going to question his bills[. T]hey're just too tough to read[,] and there's an inconsistency at the end of the month. So I had gone to Mr. Heilman and asked if I could pay a flat amount each month[,] and at the end of the year we would catch up on accounts.
>
> Q. What did he say to that?
>
> A. ["]Yeah, that's fine.["]

The parties entered into a second contract in June 1996. The second contract contained the same provision for payment, but again the parties disregarded the contract's provisions concerning payment in favor of Barefoot's making flat payments. The parties, however, began quarreling over AAA Uniform's raising the set amounts too frequently until, in October 1997, AAA Uniform sent a letter to Barefoot threatening to cease doing business with Barefoot if it did not pay the past due balance by October 21, 1997. AAA Uniform also told Barefoot in the same letter that its "account will be COD effective Thursday, October 23, 1997 unless the $1,092.76 is paid in full before this date."

Barefoot responded by noting that the parties had agreed to a set monthly payment plan and that, because of AAA Uniform's disregarding this agreement, Barefoot would accept the terms of AAA Uniform's letter and would discontinue AAA Uniform's service as of October 23, 1997. After receiving this letter, AAA Uniform collected its uniforms and supplies from Barefoot, discontinued service, and sued Barefoot for breach of contract.

The circuit court ruled that Barefoot breached the contract and awarded $11,900 in damages to AAA Uniform. The circuit court determined damages by applying a provision in the parties' contract that said:

The customer may cancel this agreement prior to the expiration date by doing all of the following: (a) give thirty (30) days written notice to AAA; (b) purchase from AAA the entire inventory of items in service or otherwise held for Customer's use, at the current retail price less thirty (30) percent thereof; (c) pay to AAA its loss of profit equal to fifteen (15) percent of Customer's average weekly rental volume for the remaining weeks of this agreement.

■ Barefoot appeals the circuit court's judgment on two grounds: (1) AAA Uniform, not Barefoot, breached the contract by reneging on the parties' agreement for set monthly payments with an annual account reconciliation and demanding immediate, premature reconciliation, and (2) the circuit court erred in enforcing the liquidated damages clause because it constituted an unenforceable penalty. We must affirm the circuit court's judgment unless no substantial evidence supports it or unless it is against the weight of the evidence or unless it erroneously declares or applies the law. *Maudlin v. Lang*, 867 S.W.2d 514, 517 (Mo.banc 1993).

■ Insufficient evidence supports the circuit court's judgment. The circuit court looked only to the parties' written contract to render its judgment. Both parties readily acknowledged that the written contract was not the full embodiment of their agreement—that they modified the written contract by making arrangements for Barefoot's flat payments.

■ In the typical case, the language of a written contract controls and will be enforced as written. *Duggins v. Simons*, 517 S.W.2d 82, 94 (Mo.1974). Evidence of a subsequent oral agreement between the parties, however, will be deemed to modify a written contract. *Willis v. Community Developers, Inc.*, 563 S.W.2d 104, 107 (Mo. App.1978).

While the parties undoubtedly modified the written agreement in this case with a subsequent oral agreement concerning payment, the record does not provide sufficient details of their agreement. AAA Uniform acknowledges that it acquiesced to Barefoot's desire for set monthly payments, but the record does not inform us how the monthly payments were to be set and how reconciliation between the flat amount and the actual amount owing was to be accomplished.

We are obligated to view the evidence in a light most favorable to the circuit court's judgment. Nonetheless, because AAA Uniform acknowledges that it modified the written contract and because the circuit court's judgment necessarily rested on the parties' written contract and not on their actual agreement, we reverse the circuit court's judgment as contrary to the overwhelming weight of the evidence. We remand to the circuit court for further proceedings so it can determine which party was in breach of this agreement.

■ We turn to Barefoot's second point that the damages provision of the parties' written contract was an unenforceable penalty clause rather than a liquidated damages clause. Because, if the circuit court determined that Barefoot breached the parties' contract, the circuit court will have to decide whether to enforce this provision, we consider Barefoot's point.

■ Liquidated damages clauses are enforceable only if, at the moment the contract is entered into, the damages would be difficult to ascertain should the parties breach the contract. This court's Eastern District declared:

An agreement, made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for

**138**

the breach, unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation.

*Grand Bissell Towers, Inc. v. Joan Gagnon Enterprises, Inc.*, 657 S.W.2d 378, 379 (Mo.App.1983) (quoting RESTATEMENT OF CONTRACTS § 339 (1932)). Typically, liquidated damages appear in construction contracts and real estate sales where the damages incurred because of a building's completion is delayed or because real estate is not on the market are virtually impossible to calculate.

The record does not establish that damages in this case were too difficult for AAA Uniform to calculate. It knew its costs and how much Barefoot was paying to rent the uniforms, towels and mats. It knew what each item's useful life was.

AAA Uniform acknowledged that it had made no efforts to calculate what its profits were in the Barefoot contract. It opted instead to establish through expert testimony that a "buy back" clause was not unusual in the industry. But simply establishing that a provision is not unusual does not establish whether it is so because damages cannot be calculated or because of other factors.

We conclude that application of a liquidated damages clause was not necessary. The record established that AAA Uniform was capable of calculating its profit or loss under this contract. More importantly, the clause required Barefoot to purchase the uniforms—something it would not have been obligated to do had it completed the term of the contract. Clearly, the buy back provision was intended to be an incentive—a penalty-to keep Barefoot from cancelling the contract. It was not intended to be a reasonable substitute for the

damages that AAA Uniform incurred because of Barefoot's cancellation. Hence, the circuit court erred in enforcing the provision.

■ A non-breaching party is entitled only to those damages, which would place him in the position he would have been in had the breach never occurred. *Mills v. Murray*, 472 S.W.2d 6, 16 (Mo.App.1971). Upon remand, should the circuit court conclude that Barefoot was the breaching party, it shall calculate damages according to the standard enunciated in *Mills* and not according to the liquidated damages provision of the parties' written contract.

JAMES M. SMART, Judge, and VICTOR C. HOWARD, Judge, concur.