

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION ONE</u>

| | | |
|---|---|---|
| ANTHONY ARCESE, | ) | ED103087 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court of |
| | ) | St. Louis County |
| v. | ) | 11SL-CC04781 |
| | ) | |
| DANIEL SCHMITT & COMPANY, | ) | Honorable Gloria Clark Reno |
| | ) | |
| Respondent. | ) | Filed:  September 6, 2016 |

Anthony Arcese ("Plaintiff") filed suit against Daniel Schmitt & Co. ("Defendant") alleging, *inter alia*, violations of the Missouri Merchandising Practices Act ("MMPA"), Section 407.010, *et seq*., in connection with the sale of a 1954 Cadillac convertible.  In response thereto, Defendant filed a counterclaim for breach of contract.  After a bench trial, judgment was entered in favor of Defendant and against Plaintiff.  The judgment of the trial court is affirmed in part and reversed in part.

## BACKGROUND

In December 2010, with the assistance of his adult children, Plaintiff, a New York resident, began exploring the purchase of a classic automobile.  Upon reviewing and searching eBay, an online auction and shopping website, Plaintiff discovered a 1954 Cadillac convertible ("Cadillac") that was listed for sale.  This Cadillac was owned by and listed on eBay by Defendant, a classic car automotive dealer located in St. Louis County.

Plaintiff's son contacted Defendant, via email, to express Plaintiff's interest in purchasing the Cadillac. Prior to presenting an offer to Defendant for purchase of the Cadillac, Plaintiff employed, at the cost of $350, the services of Mark Hiatt ("Hiatt"), a Missouri certified appraiser of classic cars. Hiatt prepared and delivered to Plaintiff a report, indicating several cosmetic items in need of repair.

Based upon the report developed by Hiatt, Plaintiff contacted Defendant to request certain repairs be performed. Defendant agreed to undertake said repairs; however, there exists considerable conflicting evidence as to who was to pay for the same.

On January 5, 2011, Defendant prepared the necessary paperwork, including a Retail Buyers Order ("RBO"), to effectuate the purchase of the Cadillac, and faxed this paperwork to Plaintiff. The RBO represented a sale price of $60,000 and required a $1,500 non-refundable deposit. The RBO included no language or representation regarding Plaintiff's requested repairs or which party was to pay for said repairs.[1]

Upon receipt, Plaintiff executed the paperwork, including the RBO, and faxed the same back to Defendant on January 5, 2011. On that same date, Plaintiff provided to Defendant a $1,500 deposit, via a credit card transaction, and Defendant removed the Cadillac from the eBay website.

Additionally, on that same date, Plaintiff mailed to Defendant a $5,500 check. The purpose of the $5,500 check is the source of contention. Defendant claims the $5,500 check was an additional deposit, made to secure the purchase of the Cadillac and was to be used toward the balance of the purchase price and requested repairs. Plaintiff contends Defendant verbally

---

[1] Approximately one month before executing the RBO, Plaintiff withdrew his intention to buy the Cadillac from Defendant. Plaintiff's previous hesitance purportedly caused Defendant to approach this transaction with much greater caution.

requested $7,000 as a deposit, with only $1,500 being non-refundable, in order to effectuate the sale of the Cadillac and to remove the Cadillac from the eBay website.

On January 19, 2011, Plaintiff and his son traveled from the State of New York to St. Louis to inspect the Cadillac at Defendant's business.  Upon a personal inspection of the Cadillac, Plaintiff discovered several faults and defects that Plaintiff was purportedly unaware of at the time of executing the RBO and paying Defendant pursuant to the parties' RBO and verbal agreement.  These defects prompted Plaintiff's hesitation to follow through with the purchase. After returning to New York, on January 23, 2011, Plaintiff's son sent an email to Defendant rescinding the contract for the sale of the Cadillac.

On January 25, 2011, Defendant responded to the email, informing Plaintiff that the full $7,000 deposit would be retained by Defendant and not returned to Plaintiff.

In April 2013, Plaintiff filed a three count petition ("Petition") in the Circuit Court of St. Louis County against Defendant, alleging, *inter alia*, Defendant violated the MMPA through unlawful retention of the full $7,000 deposit.  In support thereof, Plaintiff asserted the liquidated damages provision of the RBO permitted Defendant to retain only $1,500 of the deposit, not the full $7,000.  The liquidated damages provision of the RBO read as follows:

> FAILURE OR REFUSAL TO ACCEPT DELIVERY:  Unless this Purchase Order shall have been cancelled by Purchaser under and in accordance with the provisions of paragraphs "1" and "9" above, Dealer shall have the right, upon failure or refusal of Purchaser to accept delivery of the vehicle ordered and to comply with the terms of this Purchase Order, to retain as liquidated damages *any cash deposit* made by the Purchaser, and in the event a vehicle has been traded in as part of the consideration for the vehicle ordered by the Purchaser hereunder to sell such traded-in vehicle and reimburse himself with the proceeds of such sale for the expenses specified in paragraph "1" above and for such other expenses and losses as Dealer may incur or suffer as a result of such failure or refusal by Purchaser.

(emphasis added).

3

Defendant filed a counterclaim for breach of contract. After a two day bench trial, the trial court entered judgment in favor of Defendant and against Plaintiff: (1) finding Defendant did not violate the MMPA by retaining the full $7,000 deposit; (2) awarding Defendant $16,019.85 in actual damages on Defendant's breach of contract counterclaim; and (3) awarding Defendant $43,033.75 in attorney's fees and $5,147.92 in court costs.

This appeal follows.

## DISCUSSION

Plaintiff advances three points on appeal. In his first point, Plaintiff contends the trial court erred as a matter of law in finding against Plaintiff in his cause of action under the MMPA, in that Defendant unlawfully retained $5,500 under the guise of liquidated damages. Plaintiff maintains the RBO's liquidated damages provision limited Defendant's damages to only $1,500.

Second, Plaintiff avers the trial court erroneously declared or misapplied the law by awarding Defendant both liquidated damages in the amount of $7,000 *and* actual damages in the amount of $16,019.85.

Third, Plaintiff disputes the trial court's award of $43,033.75 in attorney's fees in favor of Defendant. Specifically, Plaintiff argues an award of attorney's fees in favor of a defendant under the MMPA is erroneous as matter of law, in that said award contravenes the legislative intent and purpose of the MMPA.

### *Standard of Review*

This court will affirm the judgment of the trial court in a bench-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); see also Repair Masters Const., Inc. v .Gray, 277 S.W.3d 854, 857 (Mo. App. E.D. 2009). We view the

4

evidence and any inferences therefrom in the light most favorable to the trial court's judgment, and we will disregard all contrary evidence and inferences. Star Dev. Corp. v. Urgent Care Assocs., Inc., 429 S.W.3d 487, 491 (Mo. App. W.D. 2014). We defer to the trial court's determination of witness credibility and the weight given thereto. Id.

However, when the issue to be determined on appeal is a question of law, such as issues of statutory interpretation and contract interpretation, "no deference is due to the trial court's judgment and our review is *de novo*." City of Richmond Heights v. Waite, 280 S.W.3d 770, 774 (Mo. App. E.D. 2009).

*Analysis*

**Point I—Validity of Liquidated Damages Provision**

In his first point on appeal, Plaintiff contends the trial court erred as a matter of law in overruling Plaintiff's cause of action under the MMPA and awarding Defendant $7,000 as and for liquidated damages. Specifically, Plaintiff argues the liquidated damages provision incorporated in the RBO limits Defendant's liquidated damages to only $1,500, and Defendant's retention of any sum over that amount violated the MMPA.

Ostensibly, Plaintiff maintains, in the alternative, should this court find the liquidated damages provision does not, as a matter of law, limit Defendant's liquidated damages to only $1,500, the trial court's award of $7,000 in liquidated damages to Defendant was, nevertheless erroneous. In support thereof, Plaintiff avers that $7,000 was neither a reasonable forecast of Defendant's harm, nor were Defendant's damages difficult to accurately discern.

### A. Rules Governing Liquidated Damages

"Liquidated damages are a measure of compensation which, at the time of contracting, the parties agree shall represent damages in a case of breach." Paragon Grp., Inc. v. Ampleman,

5

878 S.W.2d 878, 880 (Mo. App. E.D. 1994). Conversely, "a penalty [clause] is not a measure of compensation for contract breach, but rather, a punishment for default or a security for actual damages sustained due to non-performance which incorporates the idea of punishment." Goldberg v. Charlie's Chevrolet, Inc., 672 S.W.2d 177, 179 (Mo. App. E.D. 1984); see also Star Dev. Corp, 429 S.W.3d at 491 ("[P]enalty clauses serve as punishment for a default or breach.").

Ordinarily, "penalty clauses" are disguised as liquidated damages clauses. Cf. Muhlhauser v. Muhlhauser, 754 S.W.2d 2, 5 (Mo. App. E.D. 1988) (a clause demarcated as a "penalty" clause, may, nevertheless, be a liquidated damages clause); see also RESTATEMENT OF CONTRACTS § 339, *cmt. b.* ("The payment promised may be a penalty, though described as liquidated damages, and vice versa."). The mere branding of a provision in a contract as one of "liquidated damages" does not, however, make it so. Hawkins v. Foster, 897 S.W.2d 80, 85 (Mo. App. S.D. 1995). If, in fact, said provision is a penalty, the labeling of the clause is of no consequence. Id.; Boulware v. Crohn, 99 S.W. 796, 800 (Mo. App. 1907) ("Calling a sum liquidated damages is not conclusive of its character."). Accordingly, the import of construing purported liquidated damages provisions cannot be overstated, in that, generally, liquidated damages clauses are valid and enforceable, whereas "penalty clauses" are invalid and unenforceable. Grand Bissell Towers, Inc. v. Joan Gagnon Enters., Inc., 657 S.W.2d 378 (Mo. App. E.D. 1983).

"There is no bright line separating a liquidated damages clause from a penalty clause." Burst v. R.W. Beal & Co., Inc., 771 S.W.2d 87, 90 (Mo. App. E.D. 1989). However, in construing and distinguishing between valid liquidated damages clauses and invalid penalty clauses, this court is guided by RESTATEMENT OF CONTRACTS § 339 (1932), which has been adopted by the Supreme Court of Missouri. Taos Const. Co., Inc. v. Penzel Const. Co., Inc., 750

6

S.W.2d 522, 525-26 (Mo. App. E.D. 1988); see also Grand Bissell Towers, Inc., 657 S.W.2d at

379 (adopting RESTATEMENT OF CONTRACTS § 339). Pursuant to § 339 of the RESTATEMENT OF

CONTRACTS:

> (1) An agreement, made in advance of breach, fixing the damages therefor, is not
> enforceable as a contract and does not affect the damages recoverable for the
> breach, unless
>
>> (a) the amount so fixed is a reasonable forecast of just compensation for the
>> harm that is caused by the breach, and
>>
>> (b) the harm that is caused by the breach is one that is incapable or very
>> difficult of accurate estimation.

RESTATEMENT OF CONTRACTS § 339; see also RESTATEMENT (SECOND) OF CONTRACTS § 356

(1981) (cited with approval by Paragon Grp, Inc., 878 S.W.2d at 881).[2]

Furthermore, in deciphering alleged liquidated damages provisions, the intent of the

parties governs. Star Dev. Corp., 429 S.W.3d at 492; see also Goldberg, 672 S.W.2d at 179

("The case law and treatises indicate that . . . it is the intent of the parties and the special

circumstances of the cases which control; not the contract terminology."). As such, "whether an

agreement sets forth a penalty or liquidated damages [clause], we look to the intention of the

parties as ascertained from the contract as a whole." Diffley v. Royal Papers, Inc., 948 S.W.2d

244, 246 (Mo. App. E.D. 1997).

### B. The Liquidated Damages Provision Does Not, *Per Se*, Limit the Damages that May be Awarded.

---

[2] The RESTATEMENT (SECOND) OF CONTRACTS § 356 mirrors the RESTATEMENT OF CONTRACTS § 339. Specifically, § 356 of the RESTATEMENT (SECOND) OF CONTRACTS reads, in pertinent part, as follows:
> (1) Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

First, it must be noted that Plaintiff does not contend the liquidated damages provision of the RBO is invalid *per se*. Rather, Plaintiff merely asserts the liquidated damages provision limits, as a matter of law, Defendant's liquidated damages to only $1,500. Essentially, Plaintiff concedes a liquidated damages award of $1,500 as valid and enforceable, but challenges a liquidated damages award greater than $1,500. Although we note the novelty of Plaintiff's argument, we are not persuaded.

On January 5, 2011, upon execution of the RBO, Plaintiff provided to Defendant a $1,500 "non-refundable" deposit via a credit card transaction. Shortly thereafter, on the same date, Plaintiff provided to Defendant a check valued at $5,500.

In the instant matter, the RBO included a liquidated damages provision which provided for the forfeiture of "any cash deposit made by the Purchaser[.]" The full liquidated damages provision is set forth, *in toto*, supra.

At trial, there was conflicting evidence adduced regarding the purpose of the $5,500 payment and whether said payment was non-refundable or refundable. However, grounded upon the liquidated damages provision incorporated in the RBO and the evidence presented at trial, the trial court awarded Defendant $7,000 in liquidated damages and denied Plaintiff's Petition alleging a violation of the MMPA. In calculating the liquidated damages award, the judgment of the trial court stated, in relevant part, as follows:

> 39. On January 5, 2011[,] [Plaintiff] signed each of the above documents, and returned them to [Defendant] by Fax.
> 40. The [RBO] that [Plaintiff] signed on . . . January 5, 2011 provided that any amounts paid by the buyer to the Dealer toward the purchase of the vehicle could be kept by the Dealer as liquidated damages should buyer reject or refuse delivery of the vehicle. (Paragraph 11 of Agreement).
> ***
> 42. [Plaintiff] also sent a total "down payment" of $7,000 ($1,500 in the form of a nonrefundable deposit in order to remove the vehicle from the auction, and

8

$5,500 in the form of a check, as an additional payment toward the balance of the purchase price of the vehicle $60,000).

43. [Defendant] was reluctant to take the vehicle off the auction in view of the fact [Plaintiff] backed out of the last deal, nor was [Defendant] willing to begin undertaking the repairs unless the full purchase price was paid by [Plaintiff].

44. [Plaintiff] offered to send another $5,500 check (in addition to the initial credit card charge of $1,500) to secure the sale and induce [Defendant] to address the items identified on Mr. Hiatt's report.

45. Before signing and faxing the documents back to [Defendant] on January 5, 2011, and before sending his check, [Plaintiff] clearly knew that under the [RBO], both the deposit of $1,500 and the additional $5,500 were nonrefundable. (Ex. 61).

Now, on appeal, Plaintiff requests this court to: (1) reweigh certain evidence and determine the $5,500 payment was refundable; and (2) conclude, as a matter of law, the $5,500 payment was not a "deposit" for purposes of the liquidated damages provision.

As stated, supra, Plaintiff concedes the disputed provision of the RBO directs Plaintiff to pay $1,500 to Defendant as for liquidated damages. In Missouri, the forfeiture of a deposit is appropriate and tolerated for purposes of establishing liquidated damages. Carmel v. Dieckmann, 617 S.W.2d 459, 461 (Mo. App. E.D. 1981);[3] see also 25A C.J.S. Damages § 213 ("A deposit or down payment is not to be treated as liquidated damages unless the parties have so agreed. However, the designation of a deposit as "liquidated damages, evidences the parties' intention to limit the seller's recovery to the stipulated amount."); Stillwell v. Temple, 28 Mo. 156, 162 (Mo. 1859) ("There can be no reason, if a person proposes to make a purchase at a

---

[3] The vast majority of Missouri cases concerning the forfeiture of a deposit for purposes of liquidated damages arise from real estate sale contracts. See, e.g., Carmel, supra; Waite, 280 S.W.3d 770; Highland Inns Corp. v. Am. Landmark Corp., 650 S.W.2d 667 (Mo. App. W.D. 1983). However, we see no logical or legal reason why such a rule should be limited to real estate sale contracts. In fact, several previous Missouri cases have permitted the non-breaching party to retain a deposit for purposes of liquidated damages when a contract concerns something other than real estate. See, e.g., Koelling v. Bank of Sullivan, 220 S.W.2d 794 (Mo. App. 1949) (deposit for the sale of "stock of merchandise" was awarded as liquidated damages); Cleveland v. High Country Fashions, Inc., 831 S.W.2d 784 (Mo. App. W.D. 1992) (deposit for the sale of inventory and supplies for women's apparel store should be awarded as liquidated damages). Missouri is not alone in this regard. See, e.g., United Title Agency, LLC v. Surfside-3 Marina, Inc., 65 A.D.3d 1134 (N.Y. App. Div. 2009) (boat); Elec. Research Prods. v. Haniotis Bros., 39 P.2d 36 (Okla. 1944) (leased sounded equipment); Millar v. Smith, 67 S.W. 429 (Tex. App. 1902) (cattle).

9

future day, why he can not deposit stock, or any other property, with the stipulation that in the event of being disappointed in procuring means to complete a purchase, he shall only forfeit the deposit.").

Nevertheless, Plaintiff maintains that because the RBO did not include, much less, describe the $5,500 payment as "non-refundable," said payment was, in fact, refundable and not a "deposit" for purposes of liquidated damages. However, Plaintiff does admit the $5,500 was an "additional cash deposit" made pursuant to a "separate, oral agreement."

We need not resort to the canons of contract construction to determine whether the $5,500 payment was a "cash deposit," because Plaintiff, himself, admits in his brief that said payment was an "additional *cash deposit*." (emphasis added). The plain and unambiguous language of the liquidated damages provision at issue reads the Purchaser (Plaintiff) will forfeit "*any* cash deposit made[.]" (emphasis added). Thus, by Plaintiff's own admission and intent, the $5,500 payment falls under the realm of the liquidated damages provision. Triarch Indus., Inc. v. Crabtree, 158 S.W.3d 772, 776 (Mo. banc 2005) ("The guiding principle of contract interpretation under Missouri law is that a court will seek to ascertain the intent of the parties and to give effect to that intent. . . . If the contract is unambiguous, it will be enforced according to its terms.").

Moreover, this court finds there exists substantial evidence for the trial court's determination that the $5,500 payment was "non-refundable." Although there was, indeed, conflicting testimony in this regard, "an appellate court shall give due regard to the opportunity of the trial judge to judge the credibility of the witnesses . . . (and) accord deference to the trial judge's conclusions where there is conflicting testimony." S.G. Adams Printing & Stationery Co. v. Cent. Hardware Co., 572 S.W.2d 625, 628 (Mo. App. 1978). We presume the trial court

10

accounted for such conflicting evidence in making its judgment. Lovan v. City of Festus, 679 S.W.2d 931, 932 (Mo. App. E.D. 1984) ("The resolution of the conflicting testimony, the credibility of the witnesses, and the weight given to the testimony was within the discretion of the trial court.").

Finally, we note Plaintiff's proposed construction and interpretation of the RBO's liquidated damages provision is incongruent. Plaintiff seeks the benefits of the provision, but only to the extent that it benefits Plaintiff. We replicate that which our colleagues from the Missouri Court of Appeals, Southern District, succinctly stated:

> A party cannot affirm a contract in part, and repudiate it in part. He cannot accept its benefits on the one hand, while he shirks its disadvantages on the other. He cannot play fast and loose in the matter. A party will not be allowed to assume the inconsistent position of affirming a contract in part by accepting or claiming its benefits, and disaffirming it in part by repudiating or avoiding its obligations or burdens. A party to a contract cannot claim its benefits where he is the first to violate it. A party to a contract cannot have the benefit of its provisions which are favorable to him and ignore its conditions which are to be performed by him.

Hawkins, 897 S.W.2d at 86 (internal citations and quotation marks omitted).

We cannot condone Plaintiff's request. The liquidated damages provision does not explicitly limit said damages to only $1,500.

**C. The Liquidated Damages Provision is Valid and Enforceable and Not a Penalty.**

Next, Plaintiff avers the trial court's award of $7,000 in liquidated damages in favor of Defendant was erroneous because $7,000 was neither a reasonable forecast of Defendant's harm, nor were Defendant's damages difficult to accurately discern at the time of contracting. Effectively, Plaintiff attacks both prongs of § 339 of the RESTATEMENT OF CONTRACTS, supra.

We will address both prongs of RESTATEMENT OF CONTRACTS § 339. However, before proceeding, it is necessary, as discussed, infra, to determine whether Defendant evidenced proof of "actual harm or damage."

11

### 1. *Defendant evidenced proof of "actual harm or damage."*

In Missouri, before triggering a liquidated damages provision, our courts have "consistently" held that the party requesting enforcement of the liquidated damages provision "must show at least some actual harm or damage caused by the breach." Grand Bissell Towers, Inc., 657 S.W.2d at 379; see also Phillips v. Mo. TLC, LLC, 468 S.W.3d 398, 400 (Mo. App. S.D. 2015) ("While it is not necessary to actually prove damages in the same amount as stated in a liquidated damages provision, we have reasoned that without evidence of damages, a liquidated damages clause actually becomes a penalty and is unenforceable.") (internal citations and quotation marks omitted). If no damages are evidenced as a result of a breach of contract, the non-breaching party is entitled to recover nothing more than nominal damages even if the contract is construed as providing for liquidated damages. Ward v. Haren, 167 S.W. 1064, 1070 (Mo. App. 1914). Although proof of a precise dollar amount is unnecessary, "it nevertheless must be shown that some harm or damage, in fact, occurred." Valentine's, Inc. v. Ngo, 251 S.W.3d 352, 355 (Mo. App. S.D. 2008) (quoting Goldberg, 672 S.W.2d at 179).

Plaintiff contends that Defendant was not financially harmed by the breach of contract. In fact, Plaintiff avers that Defendant actually financially benefited from the breach of contract, and, therefore, no actual harm or damages were evidenced. In support thereof, Plaintiff directs this court's attention to the testimony of Daniel Schmitt ("Schmitt"), Defendant's owner.

During trial Schmitt testified: (1) the vehicle was originally purchased by Defendant for $34,475; (2) Defendant invested approximately $10,679.04 to restore the vehicle; and (3) after Plaintiff's breach, the vehicle was ultimately sold for $65,000. Based upon this testimony,

calculations reveal Defendant profited approximately $19,845.96, even after Plaintiff's breach and before any damages were awarded.[4]

In order to rebut Plaintiff's claim that Defendant financially benefited as a result of Plaintiff's breach, Defendant submitted evidence (although scant in nature) Defendant was financially harmed in the amount of $16,019.85 after Plaintiff's breach.[5] The trial court acquiesced to the same, finding, relevantly:

> 65. Plaintiff's failure to take possession of the vehicle resulted in damages to Defendant including additional costs and expenses, specifically:
>    1. Costs associated with relisting E-Bay Auction: $592.00
>    2. Additional advertising costs:
>        i) Hemmings ads: $749.85
>        ii) Cars Online ads: $175.00
>        iii) Classic Cars ads: $165.00
>        iv) Old Ride ads: $60.00
>        v) Auta [sic] Buy ads: $83.00
>    3. Additional Administrative/Office costs for re-marketing, relisting and E-bay: $425.00
>    4. Lost Profits: $12,770.00
>
> **TOTAL [DEFENDANT] DAMAGES: $16,019.85.[6]**

Assuming, *arguendo*, there exists substantial evidence to support the trial court's findings,[7] Defendant still profited, at the very least, in the amount of $3,826.11 [$19,845.96 –

---

[4] It should be noted Plaintiff's contract price was $60,000. Thus, had Plaintiff not breached, Defendant would have only profited in the amount of $14,845.96.

[5] In post-trial motions and, again, on appeal, Defendant summarizes *additional* damages, in addition to those set forth in the trial court's judgment, Defendant purportedly incurred due to Plaintiff's breach, totaling $8,726.12. The trial court's exclusion of these additional alleged damages are presumed to be occasioned by the lack of substantiation. See Rule 73.01(c) ("All factual issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached."). The trial court's judgment, in this respect, is found not to be against the weight of the evidence, unsupported by the evidence, or against the law.

[6] The trial court's listed "actual damages" only equates to $15,019.85. For purposes of this appeal, we assume the trial court's mathematical calculation is correct.

[7] We harbor significant reservations over the trial court's factual findings. For the most part, the trial court simply adopted Defendant's Proposed Findings of Fact and Conclusions of Law as the Judgment. In fact, the trial court's Judgment reads: "COMES NOW Defendant . . . and for its Proposed Findings of [F]act and Conclusions of Law[.]" We do not condone such draftsmanship by a trial court, and strongly encourage all trial courts to avoid such a practice. State v. Griffin, 848 S.W.2d 464, 471 (Mo. banc 1993) ("For obvious reasons, when a court adopts in its entirety the proposed findings of fact and conclusions of law of one of the parties, there may be a problem with appearance. The judiciary is not and should not be a rubber-stamp for anyone.").

$16,019.85], even after Plaintiff's breach.  Guidry v. Charter Commc'n, Inc., 269 S.W.3d 520, 532 (Mo. App. E.D. 2008) ("The proper measure of damages is a question of law.").

"The measure of damages in a breach of contract case is the benefit of the bargain[, and] [c]ompensation is the value of the performance of the contract."  Kincaid Enters., Inc. v. Porter, 812 S.W.2d 892, 900 (Mo. App. W.D. 1991); see also Morehouse v. Behlman Pontiac-GMC Truck Serv., Inc., 31 S.W.3d 55, 62 (Mo. App. E.D. 2000) ("Damages for breach of contract are also measured by the benefit of the bargain rule.").  "[B]enefit-of-the-bargain damages, also called lost profits damages, are the 'net profits a plaintiff would have realized' had the contract not been breached."  Catroppa v. Metal Bldg Supply, Inc., 267 S.W.3d 812, 818 (Mo. App. S.D. 2008) (quoting in part Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc., 155 S.W.3d 50, 54 (Mo. banc 2005)).  The injured party should be placed in the same position had the contract been performed.  Morehouse, 31 S.W.3d at 62.

Here, but for Plaintiff's breach, Defendant would have merely accumulated additional profits.  Mathematically, the correct equation in calculating Defendant's "benefit-of-the-bargain" damages is as follows:

$14,845.96 (Defendant's profits had Plaintiff not breached)
$\underline{- \$3,826.11}$ (Defendant's profits after selling the vehicle for $65,000)
 $11,019.85 (lost profits)

Any additional damages awarded to Defendant above and beyond this correctly calculated loss profits sum ($11,019.85) would thwart the law and place Defendant in a better position than Defendant "would have enjoyed had the contract been completed on both sides."  Guidry, 269 S.W.3d at 532.

Thus, insomuch as Defendant demonstrated loss profits, Defendant suffered "actual harm" induced by Plaintiff's breach.

14

### 2. *Prong (1): $7,000 was a reasonable forecast of Defendant's harm.*

Under the first prong of RESTATEMENT OF CONTRACTS § 339, a valid and enforceable liquidated damages clause must embrace a "reasonable forecast of damages." Star Dev. Corp., 429 S.W.3d at 493. The reasonable forecast of damages "must not be unreasonably disproportionate to the amount of harm anticipated when the contract was made." Paragon Grp., Inc., 878 S.W.2d at 881. "The amount fixed is reasonable to the extent that it approximates the actual loss that has resulted from the particular breach[.]" RESTATEMENT (SECOND) OF CONTRACTS § 356, *cmt. b.* Nevertheless, "[b]y its nature, a liquidated damages clause may operate to provide the non-breaching party more or less than his actual damages." Burst, 771 S.W.2d at 91–92.

Plaintiff avers the $7,000 amount is not a reasonable forecast of damages to be incurred by Defendant upon a breach of $60,000 contract. We acknowledge the amorphous language of the liquidated damages provision could result in an unreasonably disproportionate forecast of damages, dependent upon the sum of a purchaser's cash deposits, and we gently remind all purchasers to carefully read the entire contract before signing. Here, however, Plaintiff's cash deposits equated to only $7,000—or 11.67% of the contract price—and said amount is not unreasonable under these circumstances. See, e.g., Standard Imp. Co. v. DiGiovanni, 768 S.W.2d 190, 191-92 (Mo. App. E.D. 1989) (liquidated damages clause equal to 30% of home improvement contract price was valid to terminate contract one month after execution); Taos Const. Co., Inc., 750 S.W.2d at 525-26 (liquidated damages provision equaling 66% of value of subcontract was reasonable).

### 3. *Prong (2): The harm caused by the breach was very difficult to accurately estimate.*

Under the second prong of RESTATEMENT OF CONTRACTS § 339, a valid and enforceable liquidated damages clause necessitates a kind of harm that is difficult to accurately estimate. Star Dev. Corp., 429 S.W.3d at 492; AAA Unif. & Linen Supply, Inc. v. Barefoot, Inc., 81 S.W.3d 133, 137 (Mo. App. W.D. 2002) ("Liquidated damages clauses are enforceable only if, at the moment the contract is entered into, the damages would be difficult to ascertain should the parties breach the contract."). "Where the amount of loss or harm that has been caused by a breach is uncertain and difficult of estimation in money, experience has shown that the estimate of a court or jury is no more likely to be exact compensation than is the advance estimate of the parties themselves." RESTATEMENT OF CONTRACTS § 339, *cmt. c*. The difficulty of proof of loss is a matter to be determined *at the time of contracting*, not the time of breach. RESTATEMENT (SECOND) OF CONTRACTS § 356, *cmt. b*.

In the case in bar, the record is replete with evidence that it was, indeed, difficult to determine Defendant's loss of profits with regard to Defendant's counterclaim for breach of contract. Defendant, in fact, provided two possible damage awards to the trial court when Defendant submitted its Proposed Findings of Fact and Conclusions of Law to the trial court. Likewise, as previously discussed, the trial court erroneously calculated Defendant's harm in dramatic fashion.

Although the difficulty of proof of loss is adjudged at the time of contracting, if the parties and the trial court, alike, had such severe quandaries in determining damages at the time of breach, then, logically, the parties would have had difficulty in estimating harm at the time of contracting. Thus, the nature of the harm caused by the breach was one that was difficult to estimate.

16

Therefore, this court finds the trial court did not err in finding a valid and enforceable liquidated damages clause and permitting Defendant to retain $7,000 as a result thereof.

Point I is denied.

**Point II—Damages Awarded to Defendant**

Next, in his second point on appeal, Plaintiff challenges the trial court's award of $16,019.85 in actual damages in favor of Defendant. Specifically, Defendant maintains that the trial court's award of both liquidated damages and actual damages was erroneous as a matter of law.

Under Missouri law, liquidated damages are merely a replacement for recovery of actual damages. Mihlfeld & Assocs., Inc. v. Bishop & Bishop, L.L.C., 295 S.W.3d 163, 178 (Mo. App. S.D. 2009). Accordingly, to avoid duplicative damages, "[g]enerally, both liquidated damages and actual damages may not be awarded as compensation for the same injury." Paragon Grp., Inc., 878 S.W.2d at 882. After all, the purpose of a breach of contract cause of action "is to restore the non-breaching party to the position she would have occupied had the breaching party fully performed the contract[,]" and cannot be employed to "elevate the non-breaching to a better position than she would have enjoyed had the contract been completed on both sides." Smith ex rel. Stephan v. AF & L Ins. Co., 147 S.W.3d 767, 789-90 (Mo. App. E.D. 2004); see also Perroncello v. Donahue, 859 N.E.2d 827, 832 (Mass. 2007) ("The law of contracts is intended to give an injured party the benefit of the bargain, not the benefit of the bargain and a windfall.").

As discussed under Point I, the trial court erroneously calculated Defendant's actual damages, supra. Defendant, in sum, incurred $11,019.85 in actual damages. Thus, if this court were to deduct the $7,000 in liquidated damages awarded to Defendant, there remains a sum of $4,019.85 in actual damages for which Defendant was not compensated and for which Defendant

17

sought redress. The issue on appeal is whether Defendant can elect to seek recovery of both liquidated damages *in addition to* any and all actual damages over and beyond that which is contracted for in the liquidated damages provision.

Plaintiff contends that an award of liquidated and actual damages produces duplicative recovery in favor of Defendant for purposes of the "same injury"—namely, Plaintiff's failure to pay the contract price and take possession of the vehicle. Defendant, to the contrary, submits Defendant's award of both liquidated and actual damages was not duplicative, in that the liquidated damages award was insufficient to make Defendant whole again.

Both Plaintiff and Defendant cite to certain Missouri cases to support their respective arguments. However, while instructive, we find these cases do not directly answer the question of whether a party must *elect between* liquidated damages *or* actual damages in a breach of contract cause of action. In the alternative, we find Missouri has long held a party must elect between either liquidated damages or actual damages, and a party should be prohibited from collecting both, even if the liquidated damages fails to fully compensate the non-breaching party for his or her actual damages *for the same injury*.

In Stillwell v. Temple, 28 Mo. 156 (Mo. 1859), the defendant deposited into the possession of the plaintiff a certain quantity of stock for purposes of effectuating a real estate contract. Id. at 159. Pursuant to the written contract, should defendant fail to perform, the stock was to become the absolute property of the plaintiff for purposes of liquidated damages. Id. at 159-60. The defendant defaulted upon the written contract, and without tendering the stock back, the plaintiff brought a cause of action to collect certain rent agreed to be paid by the defendant. Id. at 160. In holding the plaintiff was barred from collecting any further damages

18

beyond that specified in the liquidated damages provision, the Supreme Court of Missouri

elaborately set forth the justifications and policies warranting such a restriction:

> The courts have indicated a strong inclination towards that construction which
> excludes the idea of liquidated damages and which limits a recovery to
> compensation for the real injury; but the rule is almost invariably invoked in favor
> of the party who is bound for the penalty, and it is seldom that a party who has
> exacted a penalty is heard to ask to be relieved from it. If the defendant was here
> seeking to be relieved of a forfeiture, and to redeem the stock on condition of
> paying the damages which the plaintiff had suffered by a breach of his covenants,
> it would become material to determine whether the stock should be treated as
> liquidated damages or as a penalty. But that question, in our opinion, is
> immaterial to the decision of this case, for, no matter how it might be determined,
> the plaintiff is not entitled to recover. If the parties at the time of making their
> agreement, in order to avoid any future dispute as to the amount of damages
> which might result from a violation of the contract, agreed upon a definite sum
> represented by the stock, the plaintiff must look to the stock, as he had agreed to
> do, as a complete and adjusted indemnity; and if, on the contrary, the construction
> contended for by the plaintiff is maintained, and it is held that the stipulated
> amount is to be regarded as a penalty, then it is not perceived on what principle he
> can ask to be relieved from a penalty he exacted himself, and be permitted to
> recover beyond the amount of it. Suppose that, instead of the stock of the mining
> company, bank stock worth a premium had been deposited to cover the breaches
> in advance, or rather that fifteen hundred dollars in money had been given to the
> plaintiff, with the express agreement that he should keep it as his own and as a
> full compensation for any damage he might suffer by the failure of the defendant
> to comply with the agreement; would it be contended that he had a right to hold
> on to the money and recover what he could besides? Could he be heard to
> complain that he was not fully compensated? In the case supposed the deposit
> would be regarded as the maximum of the defendant's liability, and though he
> might be relieved from a forfeiture of the whole sum on paying the actual
> damages occasioned by his default, the plaintiff would demand nothing beyond it.
> The defendant might insist that he should not lose all without reference to the
> extent of the injury the party had sustained; but as a penalty is generally fixed at a
> sum large enough to cover any probable liability that may be incurred, the
> plaintiff would not be allowed to recover beyond it. There can be no reason, if a
> person proposes to make a purchase at a future day, why he can not deposit stock,
> or any other property, with the stipulation that in the event of being disappointed
> in procuring means to complete a purchase, he shall only forfeit the deposit. He
> may be willing to lose that much for the chance of making a bargain, but
> unwilling or afraid to run the risk of being ruined if he should fail to comply with
> the terms of a sale.

> The plaintiff insists that the clause of the contract under consideration relates only
> to the damages that might be incurred by the failure of the defendant to purchase

the property. As any arrears of rent could easily be computed, there was little reason for securing it by a penalty, or liquidating the damages that might result from the nonpayment of it; but the parties chose to contract otherwise, and on turning to the clause, it will be seen that the obligation to pay rent is indissolubly connected with the agreement to purchase; and the plaintiff's construction can not be maintained without doing violence to his language and wresting words from their context.

Id. at 160-62.; see also Morse v. Rathburn, 42 Mo. 594 (Mo. 1868).

Although over 150 years old, this holding by our Supreme Court has never been overruled and has been frequently restated, albeit in more modern and succinct language. See, e.g., Burst, 771 S.W.2d at 91-92 ("By its nature, a liquidated damages clause may operate to provide the non-breaching party more or less than his actual damages."); Paragon Grp., Inc., 878 S.W.2d at 882 ("both liquidated damages and actual damages may not be awarded as compensation for the same injury").

In fact, those cases in which the litigants direct this court's attention cite to cases which are rooted in and can be directly traced back to Stillwell. See Bishop & Bishop, L.L.C., 295 S.W.3d 163 (holding liquidated and actual damages may be recoverable so long as the injuries are separate); Germany v. Nelson, 677 S.W.2d 386 (Mo. App. S.D. 1984) (holding it was error for the trial court to award "additional" damages above that set forth in the liquidated damages provision).

Courts of several sister jurisdictions have reached the same result our Supreme Court set forth more than 155 years ago. See, e.g., Carlos R. Leffler, Inc. v. Hutter, 696 A.2d 157, 162 (Pa. Super. 1997) ("Further, parties who agree to include a liquidated damages clause in their contract, and do so properly, cannot later claim entitlement to actual damages; rather, in keeping with the law of contracts, the parties must be bound by their bargain. This is true whether the complaint avers that the amount of liquidated damages is insufficient to fully compensate or

20

excessive in light of the actual damage caused."); <u>Se. Land Fund, Inc. v. Real Estate World, Inc.</u>, 227 S.E.2d 340, 343 (Ga. 1976) ("The liquidated damages become the maximum as well as the minimum sum that can be collected.") (internal quotation marks omitted).

Moreover, the restriction that the non-breaching party elect between liquidated damages or actual damages stands upon sound public policy. Enforceable liquidated damages provisions foster certainty for the parties, eradicate the requirement of the non-breaching party to mitigate damages, and implements that which the parties agreed to in the contract. <u>See</u> <u>Eureka Dev., Inc. v. Port Jefferson Realty, LLC</u>, 2007 WL 2908179, *3 (E.D. Mo. Oct. 3, 2007) ("In agreeing to a liquidated-damages provision one, in effect, bargains away a claim that the other party would be unjustly enriched if the liquidated-damages provisions are enforced without offsetting benefits received by the other party.") (internal citations omitted).

Here, the trial court awarded Defendant both liquidated and actual damages for the *same injury*. Defendant legally retained that sum which was permitted under the liquidated damages provision. Defendant cannot now complain the liquidated damages provision—in *Defendant's contract* drafted by a savvy businessperson—is inappropriate compensation, in that said liquidated damages are less than the sum of Defendant's actual damages, as both parties shall be bound by the plain language of their agreement. Therefore, the trial court erred in awarding Defendant any sum greater than that permitted under the liquidated damages provision, regardless of the amount of actual damages.

Point II is granted.

21

**Point III—Attorney's Fees**

Finally, in his third point on appeal, Plaintiff argues the trial court erred as a matter of law in awarding Defendant $43,033.75 in attorney's fees, which amounted to half of the attorney's fees Defendant incurred during the pendency of this matter. We strongly agree.

"Missouri courts adhere to the 'American Rule' which states that, ordinarily, litigants must bear the expense of their own attorney's fees." Lett v. City of St. Louis, 24 S.W.3d 157, 162 (Mo. App. E.D. 2000). Nevertheless, exceptions are permitted where: (1) the fees are authorized by statute or contract; (2) very unusual circumstances exist so it may be said equity demands a balance of benefits; (3) the fees result from an individual being involved in collateral litigation; or (4) in special circumstances, a party's conduct is frivolous, without substantial legal grounds, reckless, or punitive. Goines v. Mo. Dept. of Soc. Servs., Family Support & Children's Div., 364 S.W.3d 684, 688 (Mo. App. W.D. 2012).

In the instant matter, the trial court neglected to set forth justifications for its sizable award of attorney's fees in favor of Defendant. However, in the litigants' briefs, both Plaintiff and Defendant agree that the only authority upon which the trial court could have possibly awarded attorney's fees springs from the power afforded under Chapter 407, the Missouri Merchandising Practices Act. See Section 407.010, *et seq.*

Pursuant to Section 407.025.1, "[t]he court may, in its discretion, award punitive damages and may award to the *prevailing party* attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper." Section 407.025.1 (emphasis added).

22

First, for purposes of this court's disposition, we assume, *arguendo*, without deciding, Defendant is a "prevailing party" for purposes of the fee-shifting clause of Section 407.025.1.[8] Second, operating under that assumption, the issue arises as to whether a prevailing-defendant under the MMPA may be awarded attorney's fees in the same manner as a prevailing-plaintiff.

Defendant insists the plain and ordinary meaning of "prevailing party" does not limit or prohibit a trial court, pursuant to the discretion afforded thereto, from awarding a prevailing-defendant attorney's fees under Section 407.025.1. Not only does the plain language of the statute prohibit such a restriction, but Defendant also argues such an interpretation would produce a "special law" and would be deemed unconstitutional.

Plaintiff, to the contrary, contends awarding attorney's fees to a prevailing-defendant contravenes and stifles the legislative intent and purpose of the MMPA. Particularly, Plaintiff hinges his argument upon the MMPA's "statutory purpose of protecting consumers." Further, grasping the prospect of private-citizen-plaintiffs forced to pay defendant's attorney's fees, Plaintiff warns of the detrimental and deterrent effects and consequences said rule would spawn.

This court recognizes that this State's appellate courts have, on numerous occasions, discussed the propriety of awarding attorney's fees to a prevailing-plaintiff, pursuant to Section 407.025.1. However, this court also acknowledges our appellate courts have yet to explicitly address the legitimacy of awarding attorney's fees to a prevailing-defendant under the same statute. See Kawin v. Chrysler Corp., 636 S.W.2d 40, 45 (Mo. banc 1982) (declining to resolve whether the prevailing-defendant in an MMPA cause of action can be awarded attorney's fees).

---

[8] Whether Defendant can be deemed a "prevailing party" for purposes of Section 407.025.1 "is a question of some difficulty." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 482 (1990). Inasmuch as this issue was not raised at the trial court, briefed on appeal, or indispensable for this court's disposition, we leave for future determination whether Defendant "achieve[d] some of the benefits [it] sought[.]" Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (citations omitted).

23

The Missouri Legislature's employ of "prevailing party" in the fee-shifting clause of the MMPA is far from unique. The United States Congress has, in fact, enacted numerous laws authorizing courts to award attorney's fees to the "prevailing party" or either party. Such laws include, but are not limited to, the Civil Rights Attorney's Fee Awards of 1976 (42 U.S.C. § 1988), Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1132(g)), Equal Access to Justice Act (28 U.S.C. § 2412(b)), and the Securities Act of 1933 (15 U.S.C. § 77k(e)).

The Supreme Court of the United States has branded the phrase "prevailing party" as a "term of art." Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health & Human Res., 532 U.S. 598, 603 (2001). When the plaintiff is the "chosen instrument" of the statute to vindicate a policy the legislative body considered the highest priority "a moment's reflection reveals that there are . . . strong equitable considerations counseling an attorney's fee award" to a prevailing-plaintiff that are "wholly absent" in the case of a prevailing-defendant. Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n, 434 U.S. 412, 418 (1978).

Under United States Supreme Court jurisprudence, requiring a defendant to pay a prevailing-plaintiff's attorney's fees serves at least two important functions: "such fee-shifting helps secure enforcement of the underlying statute at issue *and* increases the costs to defendants of violations of theses statutes, thereby generating a greater deterrent effect." Newberg on Class Actions § 15:31 (5th Ed.) (emphasis in original); see also Fox v. Vice, 563 U.S. 826, 833 (2011) ("When a plaintiff succeeds in remedying a civil rights violation, we have stated he serves as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. He therefore should ordinarily recover an attorney's fee from the defendant—the party whose misconduct created the need for legal action. Fee shifting in such a case at once reimburses a

24

plaintiff for what it cost him to vindicate civil rights, and holds to account a violator of federal law[.]") (internal citations and quotation marks omitted).

To the contrary, under the same United States Supreme Court jurisprudence, requiring a plaintiff to pay a prevailing-defendant's attorney's fees implicates wholly different policies, in that enforcement of the underlying statute is absent. Newberg on Class Actions § 15:32 (5th Ed.). Rather, awarding attorney's fees to a prevailing-defendant should be exercised as a "penalty" to protect defendants from burdensome litigation and reserved for those rare cases where the plaintiff pursued vexatious and frivolous matters. Id. See, e.g., Christiansburg Garment Co., 434 U.S. at 421 (under a cause of action pursued under Title VII of the Civil Rights Act of 1964, a prevailing defendant may be awarded attorney's fees if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith"). Hence, under most fee-shifting federal statutes employing "prevailing party," the general rule "shifts the defendant's fees to the plaintiff on narrower grounds than the plaintiff's fees may be shifted to the defendant." Newberg on Class Actions § 15:32 (5th Ed.); cf. Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994) (the plaintiff and defendant should be treated alike for purposes of attorney's fees under the Copyright Act of 1976).

The fundamental purpose of the MMPA is the protection of customers and consumers. Berry v. Volkswagen Grp. of Am., Inc., 397 S.W.3d 425, 433 (Mo. banc 2013). "The MMPA is paternalistic legislation designed to protect those that could not otherwise protect themselves." Id. (citations omitted). To promote this laudable purpose, the MMPA broadly prohibits false, fraudulent or deceptive merchandising practices and affords our trial courts remedial measures (i.e., damages, injunctions, equitable relief, and attorney's fees), "designed not only to remedy violations of the MMPA, but also prospectively to deter prohibited conduct and protect Missouri

25

citizens." Id. In conjunction therewith, effectuating this legislative purpose is not confined to the Office of the Attorney General, but private citizens injured by MMPA violations "have a right to act as 'private attorneys general' for purposes of enforcing it." Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 769 (Mo. banc 2007).

With this backdrop, we elect to follow the guidance and interpretation provided by the United States Supreme Court and find the use of the phrase "prevailing party" in the fee-shifting statute of the MMPA to be a "term of art." As a term of art, "prevailing party" connotes differing standards for awarding attorney's fees to plaintiffs as compared to defendants. Insomuch as the MMPA unambiguously grants private citizens the authority to vindicate the policy and purpose of the MMPA, "assessing attorney's fees against plaintiffs simply because they do not prevail would substantially add to the risks inhering in most litigation and would undercut the efforts of [the Missouri Legislature] to promote vigorous enforcement of the provisions of [the MMPA]." Christiansburg Garment Co., 434 U.S. at 423. Attorney's fees in favor of the defendant shall be the extremely rare exception, rather than the rule. Trial courts shall sparingly assess attorney fees against plaintiffs and only when the defendant demonstrates the plaintiff has pursued vexatious and frivolous claims that would warrant dismissal of the claims and imposition of sanctions pursuant to Rule 55.03.

In the case in bar, Plaintiff did not pursue vexatious or frivolous claims. Plaintiff's three count petition sought redress under the MMPA, common law fraud, and negligent misrepresentation. Plaintiff's cause of action, although unsuccessful, was reasonable and non-frivolous.

Therefore, it is unmistakable the trial court abused its discretion in awarding Defendant any attorney's fees. The award of attorney's fees in favor of Defendant was against the logic of

the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. We reverse the entire award of attorney's fees and court costs awarded to Defendant.[9]

Point III is granted.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part, consistent with this opinion.

_____
Lisa P. Page, Judge

Robert M. Clayton III, P.J. and
Mary K. Hoff, J. concur.

---

[9] With this court, both Plaintiff and Defendant have filed motions for attorney's fees on appeal. Without further elucidation, both motions are hereby denied. Each party shall bear their own costs on appeal.